Willard E. BROWN III, Appellant,

v.

George Maynard GREEN and Sheehy,
Lovelace & Mayfield, P.C.,
Appellees.

No. 14–08–00592–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 1, 2009.

Joseph D. Olson, Phillip F. Arrien, Waco, TX, for Appellant.

Andy McSwain, Peter K. Rusek, G. Maynard Green, Waco, TX, for Appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

**OPINION**

ADELE HEDGES, Chief Justice.

Pursuant to section 73.001 of the Texas Government Code, the Texas Supreme Court has transferred this cause from the Tenth Court of Appeals to the Fourteenth Court of Appeals. Tex. Gov't Code Ann. § 73.001. In this cause, Willard E. Brown III appeals from a grant of summary judgment favoring appellees, attorney George Maynard Green and the law firm of Sheehy, Lovelace & Mayfield, P.C. Brown

sued appellees alleging breach of fiduciary duty and professional malpractice. The trial court granted summary judgment on both traditional and no-evidence grounds against each of these causes of action. In four issues on appeal, Brown attacks the trial court's grant of (1) a traditional summary judgment against the breach of fiduciary duty cause of action; (2) a no-evidence summary judgment against that cause of action; (3) a traditional summary judgment against the malpractice cause of action; and (4) a no-evidence summary judgment against that cause of action.[1] We affirm.

## I. Background

Brown asserts that appellees provided him with legal advice and services over a twelve-year period beginning in 1987. Brown further alleges that in 2002, appellees began representing his now former wife in divorce proceedings and other lawsuits against Brown, utilizing confidential information gained during the prior relationship with Brown. Although Brown maintains that a continuous, albeit often informal, attorney-client relationship existed from 1987 to 1999, he emphasizes certain matters as the basis for his claim that appellees breached their fiduciary duty to him by using his own confidential information against him. Included among these matters are (1) involvement of Brown and appellees in events related to a limited partnership; (2) the handling of "family resources," including management of trust accounts, mineral assets, and of separate and community property; and (3) issues surrounding the Bolton Foundation, a charitable foundation formed by the father of Brown's ex-wife, Catherine Bolton.[2]

---

1. Brown apparently asserted other causes of action below but does not complain on appeal regarding any trial court action on these oth-er causes. Accordingly, we do not address any other causes of action in this opinion.

2. It is not clear from the record whether Brown's ex-wife has reverted to using her

Brown additionally contends that appellees breached their fiduciary duty by violating an attorney's duties of loyalty and candor to a client and engaging in various inappropriate conduct, described in detail below. Brown further contends that appellees committed malpractice by manufacturing evidence and by filing suit against Brown.

As stated above, appellees brought traditional and no-evidence grounds for summary judgment on both Brown's breach of fiduciary duty and malpractice causes of action. The trial court granted summary judgment without specifying the basis therefore. Accordingly, if we find that the judgment is supported by the no-evidence grounds, we need not consider the traditional grounds raised.[3] Because, in this opinion, we indeed find that judgment was properly granted on the no-evidence grounds, we will consider only the evidence Brown produced in response to the no-evidence motion. *See City of Keller v. Wilson,* 168 S.W.3d 802, 825 (Tex. 2005) (explaining that the rule governing no-evidence summary judgments does not permit evidence to be filed in support of such a motion; thus, consideration is limited to the evidence contrary to the motion).[4]

maiden name or continues to use her married name. For ease of reference in this opinion, we shall refer to her by her maiden name "Bolton," which she apparently used as a middle name even while married.

3. Appellees suggest that because Brown styled his response specifically as a response to appellees' no-evidence motion, the judgment should be summarily affirmed because Brown failed to challenge the traditional grounds offered for summary judgment. However, the substance of Brown's response addresses both no-evidence and traditional grounds raised by appellees, and we will not read the title of Brown's pleading as controlling over its substance. *Cf. Thomas v. Long,* 207 S.W.3d 334, 339 (Tex.2006) (considering substance of motion despite title used).

4. There is some confusion among the parties as to whether we should consider Brown's deposition in regards to the no-evidence motion. Appellees filed separately a no-evidence motion and a traditional motion. As befitting a no-evidence motion, appellees did not file any supporting materials with that motion. Appellees filed substantial documentation with their traditional motion, including Brown's deposition. In his combined response to the summary judgment motions, Brown referenced his affidavit and other materials attached to the response but neither generally referenced nor attached his deposition. However, in his initial appellate brief, Brown cited copiously to his deposition, relying more often on statements in the deposition than on statements in the affidavit. Subsequently, after appellees questioned such reliance in their brief, in his reply brief, Brown disclaimed any reliance on his deposition in the trial court or on appeal.

Rule 166a(i), governing no-evidence motions for summary judgment, states that "[t]he court must grant the motion unless *the respondent* produces summary judgment evidence raising a genuine issue of material fact." Tex.R. Civ. P. 166a(i) (emphasis added); *see also City of Keller,* 168 S.W.3d at 825 (explaining that Rule 166a(i) does not permit evidence to be filed in support of a no-evidence motion; thus, consideration is limited to the evidence contrary to the motion); *Goss v. Houston Cmty. Newspapers,* 252 S.W.3d 652, 654 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ("If the movant has identified specific elements he claims lack evidence, we must then determine de novo whether the non-movant has produced more than a scintilla of probative evidence to raise a genuine issue of material fact."). It is not incumbent upon a trial court or an appellate court to search exhibits attached to other motions for evidence which might raise a material issue of fact. *See, e.g., Bynum v. Prudential Residential Servs., L.P.,* 129 S.W.3d 781, 791 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (refusing to consider affidavit attached to motion for continuance in evaluating no-evidence summary judgment); *Hight v. Dublin Veterinary Clinic,* 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet. denied) (refusing to consider evidence attached to motion when considering no-evidence summary judgment). Because Brown did not attach or specifically

## A. Brown's Affidavit [5]

In his affidavit attached to his response, Brown stated that he first met Green in 1987 at a meeting of investors in an "oil and gas limited partnership ... EPC 1980–1." Green, an attorney with Sheehy, Lovelace & Mayfield, P.C., was then representing another investor. At the meeting, certain minority interest owners expressed concern with the management of the partnership by the general partner. Green spoke at this meeting and subsequent meetings, and eventually, Brown contacted Green personally and offered to head up an effort to resolve the minority group's differences with the general partner. Brown says that he shared specifics with Green about his investment in EPC 1980–1. As the effort progressed, Brown wrote letters to other limited partners which Green reviewed for liability purposes. Green further advised Brown regarding obtaining indemnity forms from the other partners. In January 1989, the general partner filed a declaratory judgment action against the limited partners. The limited partners hired a different law firm than Sheehy, Lovelace & Mayfield, but Brown averred that Green "typically attended" status meetings on the litigation. Brown further asserted that he consulted with Green regarding the terms of service for the other law firm and that Green agreed Brown could continue to seek his advice regarding any potential liability Brown might have in the matter. According to Brown, he and Green discussed the status of the case "[f]rom time to time." The case settled in 1990. While consider-

ing the feasibility of forming a new general partner for EPC 1980–1, Brown told Green that "the vast majority" of the assets owned by Brown and his wife were in his wife's name and that most of his income derived from EPC 1980–1. He states that Green advised him to take compensation, in the event he managed the new general partner, in the form of reimbursements and perks rather than salary. Brown used a firm other than Sheehy, Lovelace & Mayfield to form the new general partner.

In his affidavit, Brown further states that "[w]hen personal matters involving my family arose, ... I sought advice from [Green]." He and Green "enjoyed a friendly relationship," and Green rarely billed him.

In 1996, Brown recommended to his wife's half-sister, Margie Clifton, that Green draft a new will for her. Afterwards, Clifton fell into a dispute regarding management of certain trusts of which she was a beneficiary. Brown again urged Clifton to consult Green, and Green filed suit on Clifton's behalf against her son. Brown maintains that during this time, he "repeatedly voiced [his] concerns" to Green about the potential for his being sued for advising Clifton. According to Brown, Green "agreed that he would serve as [Brown's] attorney in any matters relating to the Clifton lawsuit." Although Brown told Green to bill him, Green insisted that Clifton would not want Brown to incur any expenses for having advised her. Brown says that during this litigation, he shared confidential information with Green

cite to his deposition in his response to the no-evidence motion and, in fact, specifically denies any reliance thereon in his reply brief, we will not consider Brown's deposition in reviewing the grant of no-evidence summary judgment. Instead, we confine our review to the evidence Brown produced in response to the no-evidence motion.

**5.** This discussion of Brown's affidavit omits sections stricken by the court in response to appellees' objections. Brown does not complain on appeal about the trial court's grant of these objections.

regarding various disputes involving his wife's family. He gave Green "a great deal of financial information" regarding his wife's trusts, which were similar to Clifton's. When Brown was noticed for deposition in the litigation, Green originally agreed to represent him and even filed a motion to quash on Brown's behalf. Green subsequently told Brown that he could not represent him at the deposition; however, Green did coordinate to some extent with the counsel hired to represent Brown. Brown further maintains that he was very involved in Clifton's prosecution of the lawsuit and that his agreement with Green was that Green had represented him in the past and could represent him in the future but could not represent him at the deposition. According to Brown, Clifton was represented in the matter by Sheehy, Lovelace & Mayfield until 1999.

Green filed a divorce petition on Bolton's behalf in January 2002. One issue that arose during the divorce proceedings involved control of the Bolton Foundation, a charitable foundation created by Bolton's father. At that time, Bolton, Brown, and Brown's sister were the three foundation directors. According to Brown, Bolton asked him and his sister to resign, but they refused. When Green attempted to change the foundation's address, Brown told him that he could not act without board authorization. At one point, Brown's sister received a letter from Green stating that Bolton had discovered a resignation letter from the sister and had accepted it.[6] Brown states that he knew that (1) no such letter had been submitted, (2) Bolton could not accept a director's resignation without board approval, and (3) the resignation was a "bogus document."

In April 2002, Green filed a lawsuit on behalf of the foundation, seeking removal of Brown and his sister from the board. Brown contends that the filing of the lawsuit caused him to hire an attorney and incur legal costs. In June 2002, after Brown filed a motion to disqualify Green in the divorce action, Green withdrew as counsel in that case and in the Bolton Foundation lawsuit. The Bolton Foundation lawsuit was subsequently nonsuited on June 24, 2002. Charles Hodges, an attorney not associated with appellees, replaced Green as Bolton's attorney in the divorce action, and John Cullar, also not associated with appellees, replaced Green in the Bolton Foundation lawsuit, filing new pleadings. Brown then filed a second motion to disqualify Green in the divorce action, alleging that Green was sharing confidential information with Hodges.

**B. Divorce Attorney's Affidavit**

In his affidavit, Mark Morris, Brown's attorney in the divorce action, averred that when he viewed certain documents made available but not produced in the case, he discovered, among other things, the following: (1) an "engagement letter" from Green to Bolton in which Green allegedly stated that the divorce would be filed in a particular judge's court because of the firm's "special relationship with that Court"; (2) a handwritten note from Bolton to her subsequent attorney, Hodges, to the effect that a tax attorney was advising her to claim EPC 1980–1 as her separate property because her assets had benefitted the community to such an extent that Brown was able to invest in that company in his own name; (3) a letter from Bolton to Hodges asking whether Hodges would be disqualified for the same reason Green was, *i.e.,* possession of Brown's confidential information; and (4) a letter from Hodges to Bolton suggesting that he could no long-

---

6. Brown alleged that in 2002, Green instructed Bolton to "manufacture a resignation" by taking a 1990 resignation letter from Brown's sister and marking that it was accepted.

er represent her due to "competency issues" and that she should seek psychiatric treatment.[7]

## C. Other Evidence

■ Other evidence attached to Brown's summary judgment response includes: (1) a pair of hearing transcripts relating to a motion to compel in the Bolton Foundation case in which the trial judge held that the attorney-client privilege between Green and Bolton had been waived for certain documents and that the divorce and the Bolton Foundation cases were "inextricably intertwined"; (2) legal bills from appellees to Brown relating to various matters; (3) bills from various other attorneys who have represented either Brown or Bolton; (4) correspondence between Brown and appellees; (5) Brown's motion to disqualify counsel in the divorce action and the associated hearing transcript; and (6) pleadings and other filings relating to the divorce and the Bolton Foundation litigation.[8] In his briefing, Brown additionally references the fact that at some point he was sued over his involvement in distributions to his wife from trusts of which she was a beneficiary. He terms this lawsuit the "Bank of America litigation." However, there is scant evidence attached to his summary judgment response regarding the existence of such a lawsuit and nothing to indicate any specifics regarding claims or defenses therein.

## II. Breach of Fiduciary Duty

In his first two issues, Brown contends that the trial court erred in granting, respectively, appellees' traditional and no-evidence motions for summary judgment on Brown's breach of fiduciary duty cause of action. We begin by examining the ruling on the no-evidence motion.

### A. Standards and Elements

In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the non-movant's cause of action. Tex.R. Civ. P. 166a(i). A no-evidence motion must be granted unless the non-movant produces competent evidence raising a genuine issue of material fact. *Id.; Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). In reviewing a no-evidence summary judgment, we examine the record for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426. We utilize a de novo standard of review. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Other than arguing that the grounds presented in the motion were insufficient to support summary judgment, the nonmovant may not urge any issues on appeal not raised in the trial court. *See City of Houston v. Clear Creek Basin*

7. Although appellees made objections to portions of Morris's affidavit, which were similar to objections the trial court granted in regard to Brown's affidavit, appellees apparently failed to obtain a ruling on those objections.

8. In his briefing, Brown additionally cites to evidence he attached to his motion for new trial. Because there is no indication in the record that the trial court accepted or considered this late-filed evidence, we will not consider it in resolving this appeal. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex.1996) (holding that where nothing in the record indicates leave of court for late filing of a summary judgment response, appellate court should presume the trial court did not consider the late-filed evidence); *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (considering evidence attached to motion for new trial because it was apparent trial court had done so); *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex.App.-Houston [1st Dist.] 2003) (same), *pet. denied*, 181 S.W.3d 741 (Tex. 2006).

*Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979); *Bynum v. Prudential Residential Servs., L.P.,* 129 S.W.3d 781, 791 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 785–86 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *see also* Tex.R.App. P. 33.1(a).

In order to prevail on a breach of fiduciary duty claim, a plaintiff must prove: (1) the existence of a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his or her fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the breach. *Lundy v. Masson,* 260 S.W.3d 482, 501 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). An attorney can breach his or her fiduciary duty to a client by, among other things, failing to disclose a conflict of interest, failing to deliver the client's funds, placing his or her personal interests over those of the client, misusing client confidences, taking advantage of the client's trust, self-dealing, and making misrepresentations. *See Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

In their no-evidence motion, appellees acknowledged that they had, however briefly, represented Brown in the past, and, thus, to some extent, owed him a fiduciary duty. They further contended, however, that Brown could produce no evidence on the other elements, specifically that (1) there was a substantial relationship between the former representation and the actions of which Brown complains in the present lawsuit; (2) Brown divulged confidential information to appellees during the period of representation; (3) appellees breached their fiduciary duty to Brown by subsequently using or disclosing his confidential information; (4) appellees thereby caused harm to Brown; and (5)

Brown in fact suffered any damages. The trial court granted the motion without specifying the basis therefor.

### B. Existence of Duty

As mentioned, at least to some extent, appellees acknowledge the existence of a fiduciary duty because they have represented Brown in the past. *See Meyer v. Cathey,* 167 S.W.3d 327, 330 (Tex.2005) (explaining that an attorney-client relationship gives rise to a fiduciary duty as a matter of law). Indeed, Brown's affidavit and other summary judgment evidence establishes that Green and Sheehy, Lovelace & Mayfield provided legal representation or advice to Brown on several occasions. Consequently, we turn to the question of whether Brown has presented competent evidence raising a genuine issue of material fact as to whether appellees breached their fiduciary duty to Brown.

### C. Breach

Brown asserts the following categories of arguments regarding breach of a fiduciary duty in his briefing and his response to the motion for summary judgment: (1) revelation or misuse of confidential information, (2) breaches of a fiduciary's duties of loyalty and candor, and (3) various types of inappropriate conduct. We will discuss each category in turn.

#### 1. Confidential Information

Brown's primary breach of fiduciary duty argument appears to be that he relayed confidential information to Green, who then either revealed that information or misused that information against Brown in the various litigations: the divorce, the Bolton Foundation litigation, and the Bank of America litigation. Brown acknowledges that when a client alleges breach of a fiduciary duty based on inappropriate use or disclosure of confidential informa-

tion, the client must establish actual misuse or disclosure and not merely a genuine threat of misuse or disclosure. *See City of Garland v. Booth*, 895 S.W.2d 766, 772–73 (Tex.App.-Dallas 1995, writ denied); *Capital City Church of Christ v. Novak*, No. 03–04–00750–CV, 2007 WL 1501095, at *3–4 (Tex.App.-Austin May 23, 2007, no pet.) (mem. op.). In his discussion of the law relating to the breach element, however, Brown further states that "[i]n order to show a breach ... there must be evidence of a 'substantial relationship' between the prior representation and the current case," citing *Capital City Church*. This statement is a misreading of *Capital City Church* and the cases relied upon therein.

The plaintiff/former client in *Capital City Church* argued that a particular presumption applicable to attorney disqualification was also applicable to raising a fact issue on a breach of fiduciary duty by an attorney. 2007 WL 1501095, at *2–3. Specifically, a former client may attempt to disqualify his or her former attorney by showing that a "substantial relationship" exists between the prior representation and the current case. *Id.* at *3. When such a relationship exists—involving specific similarities in factual issues and liability issues or strategies—it is *presumed* that the former client revealed confidences to the attorney that would be at risk of revelation in the subsequent case. *Id.* at *3–4. Although the attorney would not be presumed to have revealed the confidences, the attorney should still be disqualified because of an appearance of impropriety. *Id.* at *3. The Austin Court of Appeals rejected the plaintiff's argument that proof of a "substantial relationship" could be used to establish a presumption of breach of a fiduciary duty, holding instead that the former client must produce evidence of an *actual* disclosure of confidences. *Id.* at *3–4. (citing *Booth*, 895 S.W.2d at 773, and *Reppert v. Hooks*, No.

07–97–0302–CV, 1998 WL 548784, at *28–29 (Tex.App.-Amarillo Aug. 28, 1998, pet. denied)). While a substantial relationship between prior representation and a subsequent case could be relevant in determining whether the attorney breached a fiduciary duty, such a relationship is neither sufficient nor necessary to raise a fact issue as to breach. *Id.* at *4. Accordingly, to show breach based on misuse or disclosure of confidential information, Brown was required to produce evidence of actual misuse or disclosure but was not required to establish a substantial relationship between representations. *See Booth*, 895 S.W.2d at 772–73; *Capital City Church*, 2007 WL 1501095, at *3–4.

In his brief, Brown makes the following arguments regarding Green's misuse or revelation of confidential information: (1) financial matters disclosed to Green in confidence, including those relating to separate property and income, subsequently became issues in the divorce proceedings; (2) the relative weakness of Brown's financial position compared to that of Bolton was revealed to Green in confidence and subsequently exploited in "multifarious" litigations; (3) facts concerning dissension in Bolton's family that Brown revealed to Green were subsequently used against Brown in the Bolton Foundation lawsuit; (4) information imparted to Green regarding Brown's role in Bolton's trust distributions was subsequently used in the Bank of America lawsuit; and (5) information concerning Bolton's alleged mental health problems was exploited by Green to Brown's detriment.

### a.) Financial Matters as Issues in Divorce

Appellant first argues that financial matters he discussed with Green became issues in the divorce proceedings. We begin by examining the evidence Brown

produced regarding the types of financial information he passed to Green. In his affidavit, Brown states that he told Green the amount of his initial investment in EPC 1980–1, the percentage ownership in the partnership this gave him, and that it represented a "very significant" investment for him.[9] Brown states that Green advised him from time-to-time regarding the restructuring of EPC 1980–1 and Brown's potential liability for involvement therein. Brown told Green that most of his family's assets were in his wife's name. Brown further states that during the course of the Clifton litigation, he [Brown] "divulged a great deal of financial information" to Green relating to the trusts for which Bolton and her sister, Clifton, were beneficiaries. Brown also cites to the inventories filed by Bolton and himself in the divorce. Both parties listed EPC 1980–1 as community property, thus making valuation of the asset an apparent issue in the divorce. In Brown's testimony at a hearing on a motion to disqualify Bolton's subsequent attorney in the divorce proceedings (Hodges), Brown stated generally that he imparted information to Green believing it to be confidential. That information included matters at issue in the divorce, such as the value of EPC 1980–1. Brown also compiled confidential information on Bolton's and Clifton's trusts for use in the Clifton litigation.[10] On appeal, Brown specifically alleges that Green (1) gained information regarding Brown's investment in EPC 1980–1 and gave advice on matters that "may" have

affected the value of that investment; (2) had preexisting knowledge of the trusts of which Bolton was a beneficiary; and (3) was aware of "separate property and ... income matters" that were disputed in the divorce and made community property claims on certain assets in the divorce based on his prior knowledge of those assets.

Regarding EPC 1980–1, assuming that the value of EPC 1980–1 was an issue in the divorce, Brown fails to explain, much less prove, how Green supposedly used Brown's confidential information. In other words, Brown does not go beyond claiming that Green had the confidential information and that value of the partnership was at issue in the divorce. He seems to argue that there was a substantial relationship between the prior representation concerning EPC 1980–1 and issues in the divorce, and that such relationship constitutes evidence of Green's breach of his fiduciary duty. This argument is expressly refuted by the cases Brown himself relies upon in his briefing. *See Booth*, 895 S.W.2d at 772–73 (holding that when a client alleges breach of a fiduciary duty based on disclosure of confidential information, the client must establish actual disclosure and not merely a genuine threat of disclosure); *Capital City Church*, 2007 WL 1501095, at *3–4 (holding that substantial relationship between prior representation and subsequent case did not, standing alone, raise fact issue on breach of fiduciary duty). While the record demonstrates that the value of EPC 1980–1 may have been an issue in the divorce, there is no indication that the issue was contentious or even that

---

9. Brown acknowledged in his affidavit that the information regarding investment amounts in the partnership was publicly available.

10. Brown also makes arguments based upon, and cites extensively to, his deposition testimony as well as exhibits attached to his motion for new trial. However, as discussed in detail above, Brown may not rely on these documents in challenging the no-evidence summary judgment.

the parties disagreed on the value, much less that Green used any confidential information in his representation of Bolton in the divorce action.

■ Regarding the information Brown allegedly gave Green relating to Bolton's and Clifton's trusts, Brown offers no explanation as to how this information was used in the divorce. The few documents concerning the divorce proceedings in the record do not reveal any issues concerning the trusts or the information in question. In her inventory, Bolton listed the trusts under "Assets Held for the Benefit of Catherine Ross Bolton Brown as a Beneficiary." Brown appears to have not listed the trusts in his inventory, and there is no indication that he disagreed with her characterization of her trusts or made any claim against them in the divorce. Consequently, there is no evidence that any confidential information Green possessed regarding the trusts was disclosed or misused in the divorce.

The remainder of Brown's claims and statements pertaining to the use of confidential information in the divorce proceedings are too general and conclusory in nature to support a claim of breach of fiduciary duty. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (holding statements in affidavit were insufficient to raise fact issue and "should have gone further and specified factual matters such as the time, place, and exact nature of the alleged [occurrence]"); *Wright v. Greenberg,* 2 S.W.3d 666, 675 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding statements in affidavit were insufficient to raise fact issue as they consisted of "conclusory statements . . . in general terms"). While Brown states that Green was aware of "separate property and . . . income matters" that became issues in the divorce and that Green made community property claims on certain assets based on his prior

knowledge of those assets, at no point does Brown specify what these alleged claims, matters, or assets were. Brown also claims to have told Green in confidence that most of his family's assets were in his wife's name, but he does not explain or provide proof or examples of how Green used or disclosed this information in the divorce. Brown has produced no evidence supporting the conclusion that Green actually used any confidential information regarding specific matters in the divorce proceedings.

### b.) Relative Weakness of Financial Position

■ Next, Brown argues that Green misused his knowledge of the relative weakness of Brown's financial position, compared to that of his wife, by filing multiple lawsuits (the divorce, the Bolton Foundation litigation, and the Bank of America litigation) as part of a "grand design" to "wear [him] down financially and emotionally." In support of this contention, Brown cites his affidavit statement that he disclosed to Green that "as to the assets owned by [Brown] and [Bolton], the vast majority of them were in her name" and that Bolton "had a substantial income from trusts and properties inherited through her family relative to [his] income which was primarily from EPC 1980–1." Elsewhere in the affidavit, Brown complains that the Bolton Foundation lawsuit caused him to incur "financial expenditure . . . during an otherwise expensive . . . divorce" and that "the Bank of America lawsuit . . . caused [him] to have to hire attorneys."

Even taking as true that Brown told Green in confidence about the discrepancy in Brown's and Bolton's financial conditions, there is no evidence, only conjecture, that Green used this information and filed the referenced cases in a "grand design" to

"wear [Brown] down financially and emotionally." [11] *See generally Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding that pleadings are presumed to be filed in good faith and not for purposes of harassment and burden is on party asserting otherwise). Brown does not support this claim in the reviewable, non-stricken portions of his affidavit, and he has not cited to or produced other evidence supporting this assertion. Moreover, regarding the three lawsuits in question: (1) Brown does not suggest that Bolton would not have filed for divorce without Green as her attorney (indeed she had previously filed and nonsuited a divorce action with a different attorney and subsequently pursued the action with a third attorney); (2) Brown points to no part of the divorce proceedings demonstrating Green's alleged attempt to exploit Bolton's economic advantage; (3) Brown repeatedly asserts in his affidavit and argument that the Bolton Foundation litigation was an attempt to have him removed from the board of directors of Bolton's family foundation, thus refuting to some degree the notion that is was for the purpose of wearing him down financially; and (4) Brown has failed to produce evidence tying Green to the Bank of America litigation, which was filed by an attorney not associated with appellees. Brown's contention that Green misused confidences by exploiting his relatively weak financial position is without support in the record.

### c.) Family Dissension

■ Brown further contends that Green used information Brown imparted regarding dissension in Bolton's family in order to sue Brown in the Bolton Foundation case. Brown says that Green "chose to orchestrate the matter in the context of a family dispute." In support of these contentions, Brown cites to his affidavit and to the original petition Green filed in the Bolton Foundation litigation. The pleading is evidence only that such a lawsuit was filed and that certain allegations were made therein; it does not by itself establish that any confidential information was revealed by Brown or misused or disclosed by Green. *See generally Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex.1995) (holding that pleadings generally do not constitute competent summary judgment evidence). In the section of his affidavit Brown cites, he states simply that "[d]uring the course of [the Clifton litigation] I shared with [Green] confidential information regarding areas of dispute between Willard and various members of [Bolton's] family." It is not clear from the context who the "Willard" mentioned is; it could be Brown himself or another person named Willard. Regardless, nothing in this statement suggests that Green used the referenced confidential information in the subsequent Bolton Foundation lawsuit.[12]

■ It appears that Brown is arguing in his briefing that the mere fact that (1) Brown gave confidential information regarding family dissension to Green, and (2) Green filed a lawsuit regarding the Bolton Foundation, means that Green must have used the confidential information in filing the lawsuit. However, this conclusion does not logically flow from the evidence or arguments provided. The original petition

---

11. Brown does not contest that Bolton herself would also have been privy to knowledge of their differing financial conditions as would any attorney Bolton hired to represent her in the divorce.

12. None of the statements in the affidavit pertaining to the Bolton Foundation litigation suggest that Green used any confidential information in that lawsuit.

in the Bolton Foundation lawsuit mentions "irreconcilable differences" between Brown and Bolton (apparently referencing the divorce action), but makes no reference to any dissension within Bolton's family or between Bolton's family and Brown. Indeed, Bolton has provided no evidence that any alleged family dissension played a role in the Bolton Foundation lawsuit. Accordingly, Brown's assertion that Green used confidential information regarding family dissension in pursuing the Bolton Foundation lawsuit is without support in the record.

### d.) Role in Trust Distributions

▇ Next, Brown asserts that Green improperly used information Brown provided regarding Brown's role in Bolton's trust distributions in the Bank of America lawsuit. He contends that although Green did not file the Bank of America lawsuit himself, he visited with the filing attorney not long before the petition was filed. In support of this contention, he cites to time records attached to his motion for rehearing, which as discussed above, we are not able to consider in this appeal.[13] Although in his affidavit, Brown asserts that he revealed information regarding Bolton's trusts, he does not state therein that this information was used against him in the Bank of America litigation. Our review of the record has not revealed any evidentiary support for Brown's contention regarding the Bank of America litigation.

### e.) Bolton's Mental Condition

▇ Lastly, Brown contends that Green exploited knowledge of Bolton's mental condition for his own benefit. In support of this contention, Brown initially cites to a nonexistent portion of the record.[14] He subsequently cites to portions of his affidavit, but nothing in the reviewable portions of the affidavit addresses his wife's mental state or any information regarding this subject that Brown may have mentioned to Green. Brown does not cite any evidence in the record, and our review has not uncovered any, lending support to his contentions that (1) he disclosed to Green confidential information about Bolton's mental state, and (2) Green used that information for his own benefit or to harm Brown. The mental condition confidential information argument is without support in the record, just as are his other arguments regarding appellees' alleged breach of fiduciary duty by misusing or revealing confidential information.

### 2. Reply Brief: Loyalty & Candor

▇ In his reply brief, Brown argues that Green breached his fiduciary duty simply by filing the divorce action and the Bolton Foundation case and by assisting in the Bank of America litigation. Brown labels this section of the brief "Breach of Fiduciary Duty: Loyalty." In a section of the reply brief labeled "Breach of Fiduciary Duty: Candor," Brown argues that Green breached his fiduciary duty in directing Bolton to falsify the resignation letter of Brown's sister from the Bolton Foundation board of directors. Brown, however, did not make any arguments based on duties of loyalty or candor in either his trial court summary judgment response or in his original appellate brief-

---

13. *See* n. 8 *supra.*

14. Specifically, Brown cites to "C.R. V. 3, pp. 60–61," which based on the form of citation he used, appears to be a citation to pages 60 and 61 of volume 3 of the clerk's record. No such page exists in that volume. Neither pages 60–61 of volume 1, nor pages 660–61, 760–61, 860–61, or 960–61 of volume 3, provide any support for Brown's contention.

ing.[15] Brown may not raise them for the first time in an appellate reply brief. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678–79; *Swaab v. Swaab*, 282 S.W.3d 519, 527 n. 10 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd w.o.j.); *Bynum*, 129 S.W.3d at 791; *see also* Tex.R.App. P. 33.1(a), 38.3.

■ Moreover, Brown predicates his breach of loyalty argument on the premise that the attorney-client relationship between Brown and Green had not ended by the time the divorce action was filed. He also appears to predicate the breach of candor argument on the premise that the attorney-client relationship had not ended by the time the resignation was allegedly falsified. Brown specifically argues that "Appellees have not produced any termination letter or other evidence that the attorney-client relationship between Appellant and Appellees was terminated prior to the filing of the divorce action."[16] However, because this is an appeal from a no-evidence summary judgment, the burden was on Brown, not appellees, to produce some evidence that the relationship existed at the relevant time period. *See* Tex.R. Civ. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. To the contrary, Brown himself acknowledged in his response to the motion for summary judgment that the attorney-client relationship between him and appellees had ended by 1999, at the conclusion of their involvement in the Clifton litigation. Having asserted in the trial court that the attorney-client relationship ended well before the other litigations were filed (in 2002) and before the alleged

falsification of the resignation letter (also in 2002), Brown is estopped from arguing otherwise on appeal. *Cf. Keith v. Keith*, 221 S.W.3d 156, 172 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (holding party was estopped from arguing on appeal that no evidence supported court's holding when party expressly refuted such contention in the trial court). For the foregoing reasons, we reject Brown's breach of loyalty and candor arguments.

### 3. Various Nefarious Conduct

■ Brown further makes various assertions of inappropriate conduct by Green and others, including "blackmail, the peddling of judicial influence, and suggestions of judicial impartiality [sic]." He alleges that Green (1) "went beyond the bounds of representation into the realm of being an actor"; (2) continued assisting Bolton even after officially withdrawing from representation; (3) manufactured evidence in the Bolton Foundation case; and (4) filed suit for an entity (the Bolton Foundation) that he did not legally represent. However, Brown neither explains how any of these generalized complaints of wrongdoing resulted in a breach of a fiduciary duty owed him, nor cites authority suggesting that such conduct constituted a breach of duty under the circumstances of this case. We decline to make Brown's argument for him. *See Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.-Dallas 2006, no pet.) (declining to address issue where party failed to discuss any of the factors deemed relevant to reso-

---

15. Brown does not provide any citations to authority regarding the duties of loyalty and candor, although courts have used these terms in describing the duties engendered by a fiduciary relationship. *See, e.g., Lesikar v. Rappeport*, 33 S.W.3d 282, 296–97 (Tex.App.-Texarkana 2000, pet. denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex.

1984), and *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 388 (1945)).

16. To the extent Brown intended to argue that duties of loyalty and candor continued after termination of the relationship, he failed to specifically articulate such an argument or cite any authority in support.

lution of the issue); *Rudisill v. Arnold White & Durkee, P.C.*, 148 S.W.3d 556, 562 n. 8 & n. 10 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (pointing out that appellants emphasized certain facts but failed to offer any explanation or authority as to how those facts related to the grant of summary judgment against them); *Wilson & Wilson Tax Servs., Inc. v. Mohammed*, 131 S.W.3d 231, 242 (Tex.App.-Houston [14th Dist.] 2004, no pet.) ("[W]e will not speculate as to the arguments that could have been brought, or attempt to make those arguments for them.").

 The trial court properly granted appellees' no-evidence motion for summary judgment against Brown's breach of fiduciary duty cause of action. Accordingly, we overrule appellant's second issue.[17] Because the no-evidence summary judgment was properly granted, we also summarily overrule appellant's first issue, challenging the traditional summary judgment on this cause of action.

## III. Malpractice

 In his third and fourth issues, Brown contends that the trial court erred in granting, respectively, appellees' tradi-

tional and no-evidence motions for summary judgment on Brown's malpractice cause of action. We will again first address the no-evidence motion. To prevail on a legal malpractice claim, a plaintiff must show that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, and (3) the breach proximately caused the plaintiff's actual damages. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex.2004). In their no-evidence motion, appellees asserted that Brown could produce no evidence on any of the elements of malpractice.

 In his response to the motions for summary judgment, Brown argued that (1) appellees owed him a duty in his capacity as a director of the Bolton Foundation (the Bolton Foundation being appellees' client in the Bolton Foundation case); (2) appellees breached that duty by manufacturing or altering evidence (the alleged resignation letter from Brown's sister) and filing suit against him; and (3) such breach caused Brown to expend time and money defending the frivolous lawsuit. Brown, however, did not file the present lawsuit in his capacity as a director of the Bolton Foundation. Nowhere in his petition does

---

**17.** In his reply brief, Brown additionally cites Rules 1.05 and 1.09 of the Texas Disciplinary Rules of Professional Conduct as establishing attorney duties that Green breached. Tex. Disciplinary R. Prof'l Conduct 1.05, 1.09, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005 & Supp. 2009) (Tex. State Bar R. art. X, § 9). However, as discussed above, a party generally may not raise issues for the first time in an appellate reply brief. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678–79; *Swaab*, 282 S.W.3d at 527 n. 10; *Bynum*, 129 S.W.3d at 791; *see also* Tex.R.App. P. 33.1(a), 38.3. Furthermore, Brown's contention that these rules establish standards by which an attorney's liability may be judged is refuted by the preamble to the State Bar Rules, which states:

> These rules do not undertake to define standards of civil liability of lawyers for profes-

sional conduct. Violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.... Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Tex. Disciplinary R. Prof'l Conduct preamble ¶ 15. A claim that a lawyer has violated a rule of professional conduct should be raised in a disciplinary proceeding. *McGuire, Craddock, Strother & Hale, P.C. v. Transcon. Realty Investors, Inc.*, 251 S.W.3d 890, 896 (Tex. App.-Dallas 2008, pet. denied). Brown cites no authority, and we are aware of none, holding an attorney liable solely based on violations of the disciplinary rules.

he mention suing in his capacity as a director. He identifies himself only as an individual in the petition and clearly makes claims solely in his individual capacity. Brown offers no explanation or authority for how he could sue appellees for malpractice in his individual capacity when he acknowledges that he was not an individual client of appellees during the time of the Bolton Foundation litigation.[18] An attorney only owes a duty of care to his clients and not to third parties, even if they may have been damaged by the attorney's representation of the client. *Barcelo v. Elliott*, 923 S.W.2d 575, 577–78 (Tex.1996); *Stancu v. Stalcup*, 127 S.W.3d 429, 432 (Tex.App.-Dallas 2004, no pet.); *see also Swank v. Cunningham*, 258 S.W.3d 647, 661–62 (Tex.App.-Eastland 2008, pet. denied) (holding that former corporate officers and shareholders could not maintain legal malpractice action in their individual capacities against law firm that represented corporation). Accordingly, the trial court did not err in holding that Brown produced no evidence to establish the duty element of a professional malpractice cause of action.

We overrule Brown's fourth issue. Because we uphold the grant of no-evidence summary judgment against this cause, we need not consider the grant of traditional summary judgment. Consequently, we summarily overrule Brown's third issue.

We affirm the trial court's judgment.

18. Brown has asserted that appellees last represented him in 1999; the Bolton Foundation case was filed in 2002.