Opinion issued April 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00040-CV

———————————

LINDA JUREK, Appellant

V.

GARY KIVELL, Appellee



 



 

On Appeal from the Probate Court

Galveston County, Texas



Trial Court Case No. 65790B

 



 

MEMORANDUM OPINION

This appeal arises out of a
long-running family dispute in which Linda Jurek fought over ownership of a
home with her father, Joseph Forrest, in three separate lawsuits.  In the first suit, Jurek entered into a
mediation agreement with Forrest in which she agreed to a settle her
claims.  Jurek later brought this suit
alleging that Forrest and his lawyer, Gary Kivell, fraudulently induced her to
sign the mediation agreement by failing to disclose Forrest’s existing
will.  The trial court granted Kivell’s
summary-judgment motion and severed the claims against him.  In three issues, Jurek contends that the trial
court erred in granting summary judgment because she presented a scintilla of
evidence to support her fraud claim, Kivell did not meet his burden of proof on
his affirmative defenses, and res judicata does not bar the action.

We affirm. 

Background

Joseph Forrest conveyed a home to
his daughter, Linda Jurek, several decades ago, but the parties later disputed
the conveyance.  Forrest sued Jurek over
ownership of the home and the court ordered them to mediation.  Forrest attended the mediation in 1999 along
with his attorney, Gary Kivell.  At the
mediation, Jurek agreed to surrender fee simple in the home and pay for the
maintanence and property taxes in return for a life estate on the
property.  The mediation agreement also
included a promise by Forrest to give Jurek a one-fourth future interest in the
home upon his death.  The mediation
agreement did not require Forrest to provide any proof that a will existed or
would be prepared conveying a one-fourth future interest in the home to Jurek
upon his death.  The trial court entered
a “Final Decree” incorporating the terms of the mediation into a judgment and
declaring that the mediation agreement was “binding upon the parties.”  

Forrest subsequently sued Jurek a
second time seeking reimbursement of insurance he paid on the home and
contending that she had not properly maintained the property as a life tenant
and had forfeited her right to her life estate in the property.  Based on the final judgment, it appears that
Jurek filed a counterclaim in which she alleged that she was fraudulently
induced to enter into the 1999 mediation settlement agreement.  The case was tried to the court.  The court found for Jurek on all of Forrest’s
claims, including that she had not forfeited her life estate, and awarded her
attorneys’ fees.  The court also found
that Jurek was not fraudulently induced to enter into the mediated settlement
agreement.

 
In 2005, Jurek filed this third lawsuit against her two sisters, both in
their individual capacity and as guardians of their father who had been
declared incapacitated.  She alleged that
Forrest and her sisters had conveyed the home to one of the sisters in
violation of the mediation agreement and that such actions constituted fraud
and breach of contract.  When Forrest
died in 2008, Jurek learned that Kivell had prepared a will approximately one
year before the mediation that left the entire remainder of the estate to her
sisters without providing for her one-fourth future interest in the home as mandated
by the mediation agreement.  She amended
her lawsuit to assert that the mediated settlement agreement superseded and
invalidated the will, or alternatively that Forrest intentionally made a false
promise to induce her to sign the agreement without any intent to keep his
promise to convey her a one-fourth future interest.  She also sued Kivell claiming that he had not
disclosed the existence or contents of the will during the mediation.

Kivell moved for summary judgment
on both traditional and no-evidence grounds including standing, res judicata,
statute of limitations, no duty to disclose, and no evidence of fraudulent
inducement, causation, or damages.   As
summary-judgment evidence, Kivell attached his own affidavit and the final
decree and judgment from the prior two lawsuits between Jurek and Forrest.  In his affidavit, Kivell stated that he was
not authorized at the mediation to disclose anything about his client’s
will.  At the time he also had no memory
of the will’s contents or any knowledge of whether Forrest had revoked his will
or intended to revoke his will in the future. 


In response, Jurek argued that Kivell failed to disclose that
Forrest’s will did not leave her the promised one-fourth future interest in the
estate, making Forrest’s promise at the mediation to convey her an interest
false at the time it was made.  She also
claimed that because Kivell prepared the will, he knew that his client’s
promise to make the conveyance to her was fraudulent.  Jurek
filed an affidavit in which she stated that she did not know of her father’s
will before the mediation, that Kivell concealed the will during the mediation,
and that her father went to the mediation “with intent not to negotiate
honestly.”  She also filed an affidavit
from her lawyer who attended the mediation stating that the terms of Forrest’s
will were a “stumbling block to settlement unless the settlement specifically
provided for [Forrest] to make a will guaranteeing Mrs. Jurek’s springing
one-fourth interest.” Jurek’s attorney also stated that Kivell never disclosed
the existence of the will during the mediation. 

The court granted summary judgment
without specifying whether it was granting the no-evidence motion or the
traditional summary-judgment motion. 
Jurek filed a motion for new trial, which was overruled by operation of
law.  The court subsequently severed Jurek’s
claims against Kivell, making the summary judgment final.  Jurek timely filed a notice of appeal. 

Summary Judgment Standard of Review

We review a trial court’s summary judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident
Life Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  If a
trial court grants summary judgment without specifying the grounds for granting
the motion, we must uphold the trial court’s judgment if any of the grounds are
meritorious.  Beverick v. Koch Power, Inc., 186 S.W.3d 145, 148 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied). 
A party seeking summary judgment may combine in a single motion a request
for summary judgment under the no-evidence standard with a request under the
traditional summary judgment standard.  Binur v. Jacobo, 135 S.W.3d 646, 650
(Tex. 2004).  When
a party has filed both a traditional and no-evidence summary-judgment motion
and the order does not specify which motion was granted, we first review the propriety
of the summary judgment under the no-evidence standard.  See Tex. R. Civ. P. 166a(i); see
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the no-evidence summary judgment was
properly granted, we need not reach arguments under the traditional
motion for summary judgment.  See Ford
Motor, 135 S.W.3d at 600.  

While it is not a model of clarity, we conclude
that Kivell’s motion was both a no-evidence and a traditional summary-judgment
motion because it relies on evidence attached to the motion, seeks summary
judgment based on a number of affirmative defenses, and broadly states that it
is seeking summary judgment under Texas Rule of Civil Procedure 166a, “including 166a(i).” (emphasis added); see Lewis
v. Nolan, No. 01-04-00865-CV, 2007 WL 926659, at * 3 (Tex. App.—Houston
[1st Dist.] Mar. 29, 2007, no pet.) (concluding that summary-judgment motion
was both no-evidence summary-judgment motion and traditional summary-judgment
motion).[1]

To prevail on a no-evidence motion for summary judgment, the
movant must establish that there is no evidence to support an essential element
of the nonmovant’s claim on which the nonmovant would have the burden of proof
at trial.  See Tex. R. Civ. P.
166a(i); Hahn v. Love, 321 S.W.3d
517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  The burden then shifts to the nonmovant to
present evidence raising a genuine issue of material fact as to each of the
elements specified in the motion.  Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Hahn, 321 S.W.3d at 524.

In a traditional summary-judgment motion, the movant has the burden to show that no
genuine issue of material fact exists and that the trial court should grant
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison Cnty. Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant moving for traditional summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum,
Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997).  The motion
must state the specific grounds relied upon for summary judgment.  Tex.
R. Civ. P. 166a(c).  When reviewing a summary-judgment
motion, we take as true all evidence favorable to the nonmovant, and indulge
every reasonable inference and resolve any doubts in the nonmovant’s
favor.  Valence Operating, 164 S.W.3d at 661; Provident
Life Accid. Ins., 128
S.W.3d at 215.  If
a trial court grants summary judgment without specifying the grounds for
granting the motion, we must uphold the trial court’s judgment if any of the
grounds are meritorious.  Beverick v. Koch Power, Inc., 186 S.W.3d
145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  

Fraud by Nondisclosure

In
her first issue, Jurek claims that the trial court erred in granting summary
judgment on her fraud claim because she presented sufficient evidence to raise
a fact issue on each of the elements of fraud by nondisclosure.  

The
elements of fraud by nondisclosure, or fraud by omission, are (1) the defendant
failed to disclose facts to the plaintiff when the defendant had a duty to
disclose such facts; (2) the facts were material; (3) the defendant knew of the
facts; (4) the defendant knew that the plaintiff was ignorant of the facts and
did not have an equal opportunity to discover the truth; (5) the defendant was
deliberately silent and failed to disclose the facts with the intent to induce
the plaintiff to take some action; and (6) the plaintiff suffered injury as a
result of acting without knowledge of the undisclosed facts.  See Horizon Shipbuilding, Inc. v. Blyn II
Holding, LLC, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no
pet.); BP Am. Prod. Co. v. Marshall, 288 S.W.3d 430, 441 (Tex. App.—San
Antonio 2008, pet. granted).  In
addition, the plaintiff must prove that the plaintiff relied on the omission or
concealment.  See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181
(Tex. 1997); Horizon Shipbuilding, Inc., 324 S.W.3d at 850; Worldwide
Asset Purchasing, L.L.C. v. Rent-A-Ctr. E., Inc., 290 S.W.3d 554, 566 (Tex.
App.—Dallas 2009, no pet.). 

Kivell’s
no-evidence motion challenged specific elements of Jurek’s fraud by
nondisclosure claim by asserting that he had no duty to disclose the existence
and contents of the will, and there was no evidence that his conduct
fraudulently induced her to settle or that his conduct caused her any damages.

Duty to Disclose

Jurek argues that Kivell had a duty to disclose the existence
and contents of the will under the common law cause of action for fraud by
nondisclosure and the state bar’s disciplinary rules for professional
conduct.  Kivell responds that he had no
duty to disclose, that any knowledge he had of the will was privileged, and he
did not have his client’s consent to disclose the will’s existence or terms.  

To recover on her fraudulent non-disclosure claim, Jurek must
show that Kivell owed a duty to speak or disclose information.  Whether a duty to disclose exists is a
question of law.  Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001).  “When the particular circumstances impose on a person a duty to speak and
he deliberately remains silent, his silence is equivalent to a false representation.”  Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986); see also McCarthy v. Wani Venture, A.S., 251 S.W.3d 573, 585 (Tex. App.—Houston
[1st Dist.] 2007, pet. denied). 

A.      Third Party Suits Against
Attorneys

Generally, the duties that arise from the attorney-client
relationship are owed solely to the client and those in privity with the attorney,
not to third persons such as adverse parties.[2]  See Brown v. Green, 302 S.W.3d 1, 16
(Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating that “[a]n attorney
only owes a duty of care to his clients and not to third parties, even if they
may have been damaged by the attorney’s representation of the client”); White
v. Bayless, 32 S.W.3d 271, 275–76 (Tex. App.—San Antonio 2000, pet. denied)
(affirming summary judgment because attorney owed no duty to adverse party); Mitchell v. Chapman, 10 S.W.3d 810, 811
(Tex. App.—Dallas 2000, pet. denied) (affirming summary judgment in
favor of defendant in “a suit filed by an unsuccessful litigant against an
opposing attorney,” on grounds that relationship between lawyer and third party
“was clearly adversarial” and lawyer “owed no legal duty” to the third party).  More specifically,
“[u]nder Texas law, attorneys cannot be held liable for wrongful litigation
conduct” toward third parties.  Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288 (Tex. App.—Fort
Worth 1997, writ denied); see also Chu v. Hong,
249 S.W.3d 441, 444 & n.19 (Tex. 2008) (stating that court was “especially reticent to open the door” to claims against
an opposing party’s attorney and that “fraud actions cannot be brought against an
opposing attorney in litigation as reliance in those circumstances is
unreasonable”); Alpert
v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) (attorney qualified immunity bars lawsuits
against opposing counsel “even if the conduct is wrongful in the context of the
underlying lawsuit”).


This rule of attorney protection exists because the third party has not
retained the attorney, the attorney’s services were not rendered to the third
party, no privity of contract exists between the third party and the attorney,
and the attorney’s duties are owed only to the client. Aplert, 178 S.W.3d at 405; White, 32 S.W.3d at 275–76.  Allowing claims against opposing counsel for
litigation misconduct undercuts an attorney’s duty to zealously represent his
clients within the bounds of the law.  Alpert, 178 S.W.3d at 405; see also Bradt v. West, 892 S.W.2d 56,
71–72 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (stating that public
has interest in “loyal, faithful and aggressive representation by the legal
profession”).  In fulfilling this duty,
an attorney has the right to pursue legal rights that he deems necessary and
proper, without being subject to liability. 
Bradt, 892 S.W.2d at 71.  If attorneys could be held liable to opposing
parties for statements made or actions taken in the course of representing
their clients, they would be forced to balance their own potential exposure against
their clients’ best interests.  Id.; see
also Chapman Children’s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d
429, 440 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that
attorney’s concern of being sued “would favor tentative rather than zealous
representation of the clients” and allowing such lawsuits “would dilute the
vigor with which Texas attorneys represents their clients and would not be in
the best interests of justice.”).

Another
reason that a non-client generally has no claim against an opposing lawyer for
fraud during litigation is because a party cannot justifiably rely on the
opposing party’s lawyer representations or silence as a matter of law.  See
McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991
S.W.2d 787, 794 (Tex. 1999). 
Generally speaking, reliance is not justified when the representation or
non-disclosure takes place in an adversarial context.  Id.  

 As a result of these policy concerns, “[A]n
attorney’s conduct is not independently actionable by an opposing party to the
suit if the conduct is part of the discharge of the lawyer’s duties in
representing his or her client.”  Alpert, 178 S.W.3d at 406; see also Chapman Children’s Trust, 32
S.W.3d at 441 (affirming summary judgment on fraud and conspiracy claims by
opposing party because law firm’s actions were undertaken in discharge of its
duties to its client); Mitchell, 10
S.W.3d at 811–12.[3]  

1.       Exceptions to Attorney
Immunity

Attorney immunity is
by no means absolute.  Attorneys can be
held liable for knowingly committing a fraudulent act outside the scope of
their legal representation of the client. 
Alpert, 178 S.W.3d at 406.  An attorney may also be liable, under some circumstances, for
negligent misrepresentations made to a non-client.  See
McCamish, 991 S.W.2d at 793–94 (noting that in some circumstances
non-clients rely on attorney’s representations and attorney intends such
reliance).  Additionally, the attorney
immunity doctrine does not affect any duty by the client to disclose the
information.  See Renfroe, 947 S.W.2d at 287.  

Finally,
the offending attorney can still be punished for wrongful litigation
conduct by the court in which the conduct occurred under the Texas Rules of
Civil Procedure.  Bradt, 892 S.W.2d at 72.  But a party does not have an independent
right of recovery, “under any cause of
action,” against the attorney of an opposing party arising from conduct the
attorney engaged in as part of the discharge of his duties in representing an
opposing party in a lawsuit.  Id. (emphasis added).  “[T]he
remedy is public, not private.”  White,
32 S.W.3d at 276.  

2.       Kivell’s Alleged Conduct

Jurek
was not Kivell’s client or in contractual privity with him so the general rule
of attorney qualified immunity applies. 
We note that the attorney immunity rule focuses on the kind of conduct
engaged in, not on whether the conduct was wrongful in the context of the
underlying lawsuit. Alpert, 178
S.W.3d at 406; Chapman Children’s Trust,
32 S.W.3d at 440; White, 32 S.W.3d at 276.  Thus, the key issue here is whether the
attorney engaged in the alleged misconduct as part
of the discharge of his duties in representing a party in a lawsuit.  Alpert,
178 S.W.3d at 406.  Jurek did not
present any argument here or evidence below that Kivell failed to disclose
information to her independent of his participation in the mediation in the
lawsuit.  Instead, she merely asserts
that Kivell had knowledge of the will.  Jurek
failed to raise a fact issue indicating Kivell’s conduct went beyond his
representation of Forrest.  

None
of the other exceptions to the attorney immunity rule apply to Kivell.  She did not raise a claim for negligent
misrepresentation.  Additionally, even if
Forrest fraudulently induced Jurek to sign the agreement, Kivell would be
liable only for his own conduct and not that of his client.  Jurek cannot overcome the attorney immunity
rule and the lack of a duty between an attorney and an adversarial third
party.  She, therefore, failed to raise a
fact issue on the element of duty to disclose on this general ground.  

B.      Liability Under Disciplinary
Rules

          Finally,
Jurek contends that a duty to disclose exists under the Texas Rules of
Disciplinary Conduct.  Specifically, she
cites Rule 1.02(c) prohibiting a lawyer from assisting a client in engaging in
fraudulent conduct, and Rule 1.02(d) requiring a lawyer to “promptly make
reasonable efforts . . . to dissuade a client” from committing fraud when the lawyer
“has confidential information clearly establishing that a client is likely to
commit a . . . fraudulent act that is like to result in substantial injury to
the financial interests or property of another.”  Tex.
Disciplinary Rules Prof’l Conduct R. 1.02(c), (d), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G, app. A (West
2005).  She further asserts that a duty
is created by Rule 4.01(b) which provides that a lawyer shall not knowingly
“fail to disclose a material fact to a third person when disclosure is
necessary to avoid … knowingly assisting a fraudulent act perpetrated by the
client.”  Tex. Disciplinary Rules Prof’l Conduct R. 4.01(b), reprinted in Tex. Gov’t Code Ann., tit.
2, subtit. G, app. A (West 2005).

The
preamble to the disciplinary rules, however, states that the rules do not in
themselves create any legal duty nor create a private cause of action.[4]   Tex.
Disciplinary Rules Prof’l Conduct preamble ¶ 15, reprinted in Tex. Gov’t Code Ann., tit.
2, subtit. G, app. A (West 2005).  The
rules are helpful guidelines for determining the standards of conduct for
lawyers but do not create a private cause of action.  See Cruse v. O’Quinn, 273 S.W.3d 766,
775 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (rules do not establish negligence
per se case or private cause of action, but may be considered in determining
public policy); McGuire, Craddock, Strother & Hale, P.C. v. Transcon.
Realty Investors, Inc., 251 S.W.3d 890, 896 (Tex. App.—Dallas 2008, pet.
denied) (stating that disciplinary rules do not create private cause of action
and  rules establish appropriate conduct
of lawyers “solely for the purpose of discipline within the profession”); Brown,
302 S.W.3d at 16 n.17 (following McGuire
and holding that there is no legal authority that attorney can be liable based
solely on violation of disciplinary rules);
Judwin Properties, Inc. v. Griggs & Harrison, P.C., 981 S.W.2d
868, 870 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that
disciplinary rules are “not enforceable” through negligence claim).  Based on these cases and the language in the
preamble that a violation of the Disciplinary Rules does not create presumption
that a legal duty to a client has been breached, let alone a duty to a
non-client, we decline to create a duty to speak for the tort of fraudulent
nondisclosure based solely on the Rules. 

Jurek failed to raise a fact issue as to Kivell’s duty to
disclose the existence of Forrest’s will. The trial court, therefore, properly
granted Kivell’s motion for summary judgment. 
We overrule Jurek’s first issue.  Because
this is dispositive of the issues presented, we need not address whether
summary judgment based on the remaining grounds was proper.  See
Ford Motor, 135 S.W.3d at 600.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel consists
of Justices Higley, Brown, and Bennett.[5]

 











[1]
          As part of her second issue,
Jurek argues that the trial court improperly shifted the burden for summary
judgment on Kivell’s affirmative defenses onto her because Kivell only filed a
no-evidence motion.  We reject this
argument because we read Kivell’s motion as both a traditional and a
no-evidence summary judgment motion.





[2]           We describe the protection provided to attorneys from
claims by their adversaries as “qualified immunity” from civil liability
because it only applies to claims by non-clients for actions taken in
connection with representing a client in litigation.  Alpert
v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.—Houston
[1st Dist.] 2005, pet. denied); Dixon
Fin. Servcs., Ltd. v. Greenberg, Peden, Siegmeyer & Oshman, P.C., No.
01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20,
2008, pet. denied) (mem. op.).  This
principle is also described as the “attorney immunity doctrine.”  Reagan Nat’l Adver. of Austin, Inc. v.
Hazen, No. 03-05-00699-CV, 2008 WL 2938823, at *2 (Tex. App.—Austin July
29, 2008, no pet.).





[3]           This
court has repeatedly held that a fraud action against an opposing attorney is
not actionable when the attorney’s alleged conduct is part of the discharge of
the attorney’s duties in representing his client:  Bosch
v. Armstrong, No. 01-08-00847-CV, 2009 WL 1635318, at *3–4 (Tex.
App.—Houston [1st Dist.] June 11, 2009, no pet.) (upholding summary judgment on claims for
malicious prosecution, defamation, fraud, and abuse of process by plaintiff
against opposing counsel in underlying litigation); Dixon Fin. Servs., Ltd. v. Greenberg, No. 01-06-00696-CV, 2008 WL
746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no pet.) (upholding summary judgment on claims for conversion,
abuse of process, fraud and conspiracy to defraud by plaintiff against opposing
counsel in underlying litigation, noting plaintiff cannot “salvage an otherwise
untenable claim merely by characterizing it as tortious”); Alexander v. Malek, No. 01-06-01156-CV, 2008 WL 597652, at *3 (Tex.
App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (affirming summary judgment on claims based on
attorney’s representations to opposing party regarding trial date).





[4]           The preamble
states: “Violation of the Texas Disciplinary Rules of
Professional Conduct does not give rise to a private
cause of action nor does it create any presumption that a legal duty to a
client has been breached . . . .  Accordingly,
nothing in the rules should be deemed to augment any substantive legal duty of
lawyers or the extra-disciplinary consequences of violating such a duty.”  Tex.
Disciplinary R. Prof’s Conduct preamble ¶ 15, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G,
app. A (West 2005).





[5]
          The Honorable Alfred H. Bennett,
Judge of the 61st District Court of Harris County, participating by assignment.