**Opinion issued March 26, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00202-CV

———————————

**ROBERT L. MOODY, JR., Appellant**

**V.**

**IRWIN "BUDDY" HERZ, JR., Appellee**

On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Case No. 20-CV-1564

## MEMORANDUM OPINION

Irwin "Buddy" Herz, Jr. moved to dismiss Robert L. Moody, Jr.'s lawsuit

under Rule 91a of the Texas Rules of Civil Procedure. The trial court granted Herz's

motion as to some of Moody's claims but not others. Afterward, Herz successfully

moved for traditional summary judgment on the remainder of Moody's claims. Moody appeals from both the trial court's dismissal order and summary judgment.

For the reasons explained below, we affirm in part, reverse in part, and remand this cause to the trial court for further proceedings consistent with our opinion.

## BACKGROUND

### Introduction

Robert L. Moody, Jr., who goes by the name of Bobby, sued his brother, Ross Rankin Moody; the law firm of Greer, Herz & Adams LLP; and one of the law firm's partners, Irwin "Buddy" Herz, Jr., for breach of fiduciary duty and related torts. In general, Bobby alleges that Ross, the law firm, and Herz acted in concert to push him out of the Moody business empire, take charge of it for themselves, and enrich themselves at his expense after the family patriarch, Robert L. Moody, Sr., was diagnosed with Alzheimer's disease in 2015. Not long before that time, Ross and Herz successfully urged Moody, Sr. to execute a power of attorney that gave control of Moody, Sr.'s business interests to the trust department of Moody National Bank, which Herz now ostensibly controls in his capacity as trustee of the Three R Trusts because this trust in turn owns and controls the shares of Moody National Bank.

Ross and the law firm obtained dismissal of all the claims made against them under Rule 91a of the Texas Rules of Civil Procedure, and these claims and parties were then severed from the claims made against Herz. Bobby separately appealed

from the dismissal of the claims against Ross and the law firm, and we affirmed the trial court's dismissal. *See Moody v. Greer, Herz & Adams LLP*, No. 01-21-00575-CV, 2023 WL 2697889, at *1 (Tex. App.—Houston [1st Dist.] Mar. 30, 2023, pet. denied) (mem. op.). The present appeal solely concerns the claims against Herz.

**Bobby's Allegations against Herz**

In his live pleading, Bobby asserts that Herz is a fiduciary in three distinct capacities. First, Bobby alleges that Herz owed Bobby a fiduciary duty in Herz's capacity as a lawyer who previously represented Bobby and Bobby's business interests. Second, Bobby alleges that Herz owes Bobby a fiduciary duty in Herz's capacity as a lawyer who represents various organizations on which Bobby serves as a board member within the Moody business empire. Third, Bobby alleges that Herz owes Bobby a fiduciary duty in Herz's capacity as trustee of the Three R Trusts, given that Bobby is one of the four designated beneficiaries of this trust.

However, Bobby asserts actual causes of action for breach of fiduciary duty against Herz solely with respect to the first and third capacities. That is, Bobby alleges Herz breached his fiduciary duties during his previous legal representation of Bobby and Bobby's business interests and in his capacity as trustee of the Three R Trusts. Bobby expressly disavows that he asserts any claims against Herz in his capacity as a lawyer for any organization within the Moody business empire.

### *Allegations against Herz as Lawyer*

With respect to Herz's previous representation of Bobby and Bobby's business interests, Bobby alleges that for more than 30 years Herz represented Bobby and several businesses that Bobby owns or controls—specifically, Moody Insurance Group and three urgent care clinics. Bobby further alleges that Herz represented Bobby in various real-estate ventures during this period. In October 2017, Herz (as well as the law firm) terminated this attorney–client relationship.

During the same period that Herz represented Bobby and Bobby's business interests, Herz (and the law firm) acted as counsel for many organizations affiliated with the Moody business empire. These organizations include but are not limited to the American National Insurance Company, National Western Life Insurance Company, Moody Foundation, Moody Endowment, Moody National Bank and its indirect parent company Moody Bancshares, Moody Neurorehabilitation Institute (formerly known as Transitional Learning Center), and Regent Care.

Bobby alleges a multitude of breach-of-fiduciary-duty claims against Herz in his capacity as Bobby's former lawyer. They fall into four general categories.

First, Bobby alleges breaches of fiduciary duty based on the placement of persons other than himself—specifically, Ross or his preferred candidates—on the boards of Moody-affiliated organizations and based on other acts that diminished Bobby's role in these organizations. Bobby alleges Herz (and the law firm):

- successfully worked to have Ross placed on the boards of Moody National Bank and Moody Bancshares;

- successfully worked with Ross to have Ross's daughter placed on the board of the Moody Foundation instead of Bobby;

- conspired to prevent Bobby from being placed on the board of a Moody-affiliated foundation—the Robert L. Moody Foundation—that will choose the next trustee of the Three R Trusts;

- conspired with Ross to put Ross and Herz on American National Insurance Company's board and make Ross chairman, while removing Bobby;

- conspired with Ross to put Ross on Moody National Bank's board in return for Herz (and the law firm) becoming National Western Life Insurance Company's general counsel;

- conspired with Ross to eliminate Bobby from all board positions in Moody-affiliated organizations and to end all contracts Bobby or his businesses had with these organizations;

- worked with Ross to eliminate the board fees that Bobby received from the Moody Endowment;

- repeatedly lied to Bobby about board meetings and elections;

- failed to disclose to Bobby the board meeting at which current board members of the Robert L. Moody Foundation were chosen; and

- successfully worked with Ross to demote and replace the head of Moody National Bank's trust department.

Second, Bobby alleges breaches of fiduciary duty based on conflicts of interest arising both from the failure to disclose these conflicts and taking actions adverse to him based on these conflicts. Bobby alleges Herz (and the law firm):

- repeatedly placed the interests of other clients—including American National Insurance Company, Moody National Bank, and National Western Life Insurance—ahead of Bobby's interests;

- repeatedly placed his own interests—specifically his financial interests in representing Moody-affiliated organizations that generated greater fees than Bobby's business interests—ahead of Bobby's interests;

- repeatedly placed his own interests in being appointed as a board member of Moody-affiliated organizations ahead of Bobby's interests;

- repeatedly failed to disclose conflicts of interest inherent in his legal representation of the various Moody-affiliated organizations, including conflicts of interest arising from the simultaneous representation of Bobby, American National Insurance Company, National Western Life Insurance, and Regent Care;

- failed to address conflicts of interest resulting from his legal representation of Bobby and various Moody-affiliated organizations, including the use of information gained from representing the former while representing the latter;

- failed to disclose and eliminate conflicts of interest inherent in the representation of two competing insurance companies, American National Insurance Company and National Western Life Insurance Company;

- failed to treat beneficiaries of the Three R Trusts equally and worked to advance Ross's interests ahead of Bobby's interests; and

- failed to disclose and eliminate conflicts of interest inherent in representing multiple beneficiaries of the trust as well as entities within the trust.

Third, Bobby alleges breaches of fiduciary duty based on the use of confidential and nonconfidential information, including financial information, that Herz (and the law firm) gained while representing him and his business interests for 30-plus years. Bobby alleges that Herz (and the law firm) used this information to:

- have Bobby removed from the board of American National Insurance Company;

- have Bobby removed from being chairman of Moody Bancshares;

6

- remove Bobby's ability to vote Moody Bancshares' interest in the stock of another business—Hometown Bank;

- prevent Bobby from being named chairman of Moody National Bank;

- work to end various contracts and agreements Bobby had with multiple Moody-affiliated organizations, including American National Insurance Company, Regent Care, and Transitional Learning Center;

- assist and conspire in the cancelation of the marketing agreement between Bobby and American National Insurance Company;

- assist and conspire in the cancelation of the consulting agreement between Bobby and American National Insurance Company;

- end a significant line of business Bobby had with Regent Care;

- work to reduce and ultimately eliminate Bobby's commissions earned as a result of his work with Regent Care;

- work to remove Bobby as agent of record for Transitional Learning Center; and

- work to harm Bobby financially with the goal of assisting Ross to gain control and leadership of all Moody-affiliated organizations.

Fourth, Bobby alleges several breaches of fiduciary duty that do not fit into the preceding categories or form a coherent category of their own. In particular, Bobby alleges that Herz (and the law firm) breached their fiduciary duty by:

- repeatedly failing to deal fairly and in good faith with Bobby;

- trying to evict Bobby from his office of more than 33 years;

- charging all Moody-affiliated organizations, the ones that are assets within the Three R Trusts in particular, greatly increased legal fees; and

- Herz stating that he would financially ruin Bobby and make Bobby's life miserable.

7

*Allegations against Herz as Trustee*

With respect to Herz's role as trustee of the Three R Trusts, Bobby alleges that his father created this trust in June 1960 and served as trustee until April 1971, when Herz assumed the role. Though it is governed by a single trust agreement and its assets are not segregated, the Internal Revenue Service treats the Three R Trusts as four separate trusts with four beneficiaries. These four are Robert L. Moody, Sr.'s children: Bobby, Ross, Russell Moody, and Frances Moody-Dahlberg.

The assets of the Three R Trusts include the shares of Moody National Bank. Once the bank's trust department began managing Robert L. Moody, Sr.'s holdings via a power of attorney after he was diagnosed with Alzheimer's disease, Bobby alleges that Herz, in his role as trustee, effectively assumed control of these holdings. These holdings include the controlling shares of two insurance companies: American National Insurance Company and National Western Life Insurance Company.

Bobby alleges a multitude of breach-of-fiduciary-duty claims against Herz in his capacity as trustee of the Three R Trusts, many of which mirror the claims made against Herz in his capacity as lawyer. They fall into four general categories.

First, Bobby alleges breaches of fiduciary duty based on the placement of persons other than himself—including Ross, Herz, or others preferred by Herz—on the boards of Moody-affiliated organizations and based on other acts that diminished Bobby's role in these organizations. Bobby alleges Herz in his role as trustee:

- failed to disclose to, concealed from, or lied to Bobby about Herz's intent and efforts to put himself or others on the boards of or in other positions within Moody-affiliated organizations—including the Robert L. Moody Foundation, American National Insurance Company, Moody Bancshares, and Moody National Bank—and to remove Bobby from like positions;

- used his position as trustee to put himself on the boards of American National Insurance Company and Moody National Bank;

- used his position as trustee to put his law-firm partner Greg Garrison on the boards of Moody Bancshares and a related bank (Hometown Bank);

- voted himself onto the board of American National Insurance Company by virtue of his control of Moody National Bank;

- conspired with Ross to put Ross on the board of American National Insurance Company outside the usual time for making appointments;

- conspired with Ross to make Ross chairman of the boards of American National Insurance Company and National Western Life Insurance Company;

- conspired with Ross to remove Bobby from the boards of American National Insurance Company and Transitional Learning Center and to prevent Bobby from being put on the board of the Moody Foundation or becoming chairman of the board of Moody National Bank;

- conspired with Ross to remove Bobby as agent of record for Transitional Learning Center, National Western Insurance Company, and Regent Care;

- demoted the head of Moody National Bank's trust department and filled the position with another, with Ross's aid and without Bobby's input;

- conspired with Ross to eliminate the board fees that Bobby received from the Moody Endowment;

- conspired with Ross to cancel Bobby's consulting and marketing agreements with American National Insurance Company;

- conspired with Ross to cancel Bobby's health insurance and intentionally failed to send Bobby the required COBRA letter; and

- conspired with Ross to cancel Bobby's company car.

9

Second, Bobby alleges breaches of fiduciary duty based on conflicts of interest that resulted in self-dealing by Herz or acts by Herz that adversely affected the trust's assets or beneficiaries, including Bobby. Bobby alleges that Herz:

- used his position as trustee to perform legal services for Moody-affiliated organizations that are trust assets, including Moody Bancshares, Moody National Bank, and Regent Care, and to impose increased fees;

- secured selection of his law firm as general counsel for National Western Life Insurance Company in exchange for assisting Ross in Ross's efforts to control various Moody-affiliated organizations;

- created a conflict of interest by earning significant income in representing Moody-affiliated organizations that are trust assets, given that he also had a duty to preserve and maximize the value of these trust assets;

- used his position as trustee to secure benefits, like grants from Moody-affiliated charities, for his family members and charitable interests; and

- treated the trust beneficiaries differently from one another, specifically by taking actions that benefited Ross and harmed Bobby.

Third, Bobby alleges breaches of fiduciary duty based on Herz's mismanagement of the trusts or its assets or other trust-related malfeasance or misfeasance. Bobby alleges that Herz as trustee breached his fiduciary duties by:

- failing for many years to make productive use of millions of dollars of cash within the trust and thereby depriving the trust of millions of dollars in interest, dividends, and higher equity values;

- failing to disclose to the beneficiaries how much Herz earns as counsel in representing the Moody-affiliated organizations that are trust assets;

- failing to properly account for trust expenses, including how Herz was paid by the trust or the Moody-affiliated organizations that are trust assets;

10

- intentionally mismanaging an unspecified Moody-affiliated organization that is a trust asset, and then profiting by representing the organization when it was sued due to his mismanagement; and

- delegating his authority or responsibility to preserve and protect trust assets to unspecified third parties.

Fourth, Bobby alleges a single breach of fiduciary duty that does not fit into the preceding three categories. Namely, Bobby alleges that Herz breached his fiduciary duty in his role as trustee when he stated that he would financially ruin Bobby and make Bobby's life miserable at a Moody National Bank board meeting.

### *Conspiracy Allegations against Herz as Lawyer and Trustee*

Bobby alleges that Herz (and the law firm) conspired with Ross to breach the fiduciary duties they all owe to him. According to Bobby, the conspiracy's purpose was to seize control of the Moody business empire and enrich themselves. He generally alleges that Herz had a meeting of the minds with the others and took multiple unlawful and overt acts to achieve this end. In support of his conspiracy claim, Bobby relies on the conspiracy allegations that he made in support of his claims for breach of fiduciary duty against Herz as a lawyer and as a trustee.

### **Herz's Motions to Dismiss and the Trial Court's Ruling**

### *Herz's Rule 91a Motions*

Herz effectively filed two motions to dismiss Bobby's claims under Rule 91a of the Texas Rules of Civil Procedure. In the first motion, Herz joined the law firm in seeking dismissal of the claims made against them arising from their legal

11

representation of Bobby and his business interests. In the second motion, Herz sought dismissal of the claims made against him as trustee of the Three R Trusts.

With respect to the breach-of-fiduciary-duty and other claims arising from the legal representation of Bobby and his business interests, Herz (and the law firm) moved for dismissal on the ground that none of these claims has a basis in law or fact. Herz argued that Bobby's allegations conceded that he and the law firm had stopped representing Bobby in October 2017 and had only represented him as to three categories of business endeavors beforehand: Moody Insurance Group, three urgent care clinics, and real-estate ventures. Thus, Herz further argued, any fiduciary duty he owed Bobby was limited to these representations. But according to Herz, Bobby's alleged breaches of fiduciary duty did not arise from these representations and thus did not state a viable cause of action. Nor had Bobby alleged any facts relating to Herz's representation of him or his business endeavors. Moreover, Herz argued that Bobby could not bring claims for breaches of fiduciary duty that Herz or the law firm allegedly committed against others, like the various Moody-affiliated organizations, due to lack of capacity or standing. Finally, Herz argued that Bobby's allegations as to damages were conclusory other than Bobby's claim for disgorgement of attorney's fees and that Bobby only sought disgorgement of fees that others had paid to Herz or the firm, which does not state a legally valid claim.

With respect to the breach-of-fiduciary-duty and other claims made against Herz in his capacity as trustee, Herz moved to dismiss all claims on the ground that none of them has a basis in law or fact, but he distinguished between those claims that arose from his ostensible mismanagement of the trust and the other claims. Herz argued that the trust-mismanagement claims failed either because they were insufficiently pleaded or barred by the terms of the trust agreement. Herz maintained that the remainder of the claims made against him in his capacity as trustee failed for a variety of reasons: he had no fiduciary duty as to organizations or other assets not administered by the trust; he had no fiduciary duty to provide Bobby with board positions or other perquisites even with respect to the organizations and assets within the trust; Herz was not responsible or liable as trustee for actions taken by third-parties, like the various Moody-affiliated organizations; Bobby lacked capacity or standing to complain of the appointment of others to the boards of these organizations; and any conflicts of interest, including the provision of legal services by Herz (and the law firm), are expressly authorized by the trust agreement.

### *Trial Court's Ruling*

The trial court granted Herz's Rule 91a motion in part and denied it in part. In its written order, the trial court stated that Herz's motion was denied as to the claims asserted against him "as Trustee" and granted as to "all other claims against" him.

13

**Change of Venue**

Up until this point, including the Rule 91a motions and ruling, Bobby's lawsuit proceeded in the 55th District Court of Harris County. Afterward, pursuant to a motion to change venue, his lawsuit was transferred to the 122nd District Court of Galveston County. In the new trial court, Herz moved for summary judgment.

**Herz's Summary-Judgment Motion and the Trial Court's Ruling**

*Herz's Motion for Traditional Summary Judgment*

Herz moved for traditional summary judgment on the "remaining claims in this litigation," which he characterized as just five claims relating to his alleged trust mismanagement. These mismanagement claims correspond to the aforementioned third category of claims Bobby asserted against Herz in his capacity as trustee. Herz maintained that the terms of the trust agreement foreclose these five claims.

Herz distinguished between these five trust-mismanagement claims and all the other claims Bobby made against him in his capacity as trustee. Herz maintained that all other claims made against him in his capacity as trustee were not genuinely related to his performance as trustee and therefore had already been dismissed by the trial court under Rule 91a of the Texas Rules of Civil Procedure.

*Bobby's Response in Opposition to Summary Judgment*

In his response, Bobby disagreed with Herz's characterization of the prior dismissal order, contending that its plain language denied dismissal as to all claims

14

made against Herz in his capacity as trustee. Thus, Bobby reasoned, Herz's summary-judgment motion did not even address most of the remaining claims.

As to the five trust-mismanagement claims addressed in Herz's summary-judgment motion, Bobby maintained that the trust agreement requires good faith and that Herz had not conclusively established his good faith. Bobby also supported his response with a declaration in which he restated his claims against Herz.

### *Trial Court's Ruling and Attorney's Fees*

The trial court ruled that Herz was entitled "to summary judgment with respect to all remaining claims asserted," granted summary judgment, and dismissed "all remaining causes of action asserted against Trustee Herz." In its order, the trial court also set a deadline for Herz to seek attorney's fees, which Herz later did.

By separate order, the trial court ruled that Herz was entitled to recover the fees he incurred through the date of the initial dismissal order under Rule 91a.7 of the Texas Rules of Civil Procedure. The trial court further ruled that Herz was entitled to recover the fees he incurred in defending himself from the claims made against him in his capacity as trustee under the Texas Trust Code. In total, the trial court awarded Herz $500,000 in fees and conditionally awarded appellate fees.

### **Trial Court's Final Judgment**

In its final judgment, the trial court noted the 55th District Court's Rule 91a order dismissing "certain claims" against Herz, as well as its own summary-

15

judgment order "disposing of all remaining claims and causes of action against Herz, and its order awarding Herz attorney's fees." Based on these orders, the trial court dismissed all claims against Herz, confirmed its award of attorney's fees, and denied all relief not granted, reciting that its judgment disposed of all claims and was final.

## DISCUSSION

On appeal, Bobby raises four issues. First, he contends the trial court erred when it granted in part Herz's Rule 91a motion to dismiss his claims. Second, Bobby contends the trial court erred in refusing to allow him an opportunity to amend his live pleading before dismissing some of his claims under Rule 91a. Third, he contends the trial court erred in granting Herz's motion for summary judgment. Finally, Bobby contends the trial court erred in awarding attorney's fees to Herz.

As in the trial court, the parties disagree about the scope of the order dismissing some of Bobby's claims under Rule 91a. Bobby maintains the order disposed of the claims he made against Herz as his lawyer but did not dispose of any of the claims he made against Herz in his capacity as trustee. Herz argues the Rule 91a dismissal order disposed of all but the five trust-mismanagement claims. Because it affects our review, we turn to the scope of the dismissal order first.

## Scope of the Rule 91a Dismissal Order

### *Standard of Review*

When we must decide the legal effect of a court order, we do so de novo. *Kim v. Ramos*, 632 S.W.3d 258, 265 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

### *Applicable Law*

We interpret court orders and judgments in the same way that we ascertain the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971); *Garcia v. Kubosh*, 377 S.W.3d 89, 98 (Tex. App.—Houston [1st Dist.] 2012, no pet.). We must interpret an order or judgment "as a whole toward the end of harmonizing and giving effect to all the court has written." *Point Lookout W. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam). In interpreting an order or judgment, we consider its "entire content." *Id.* If taken as a whole, the order or judgment is unambiguous, then we "must declare the effect of the order in light of the literal meaning of the language used." *Quanto Int'l Co. v. Lloyd*, 897 S.W.2d 482, 486 (Tex. App.—Houston [1st Dist.] 1995, no writ). We do not look outside the order or judgment for its meaning when its terms are unambiguous. *Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam).

An order or judgment is ambiguous only if its terms are "susceptible of more than one reasonable interpretation." *Id.* When this is the case, "we look to the surrounding circumstances" to determine its meaning. *Id.* The surrounding

17

circumstances include the record, like relevant pleadings, motions, and other papers relating to the order or judgment. *See Lone Star Cement*, 467 S.W.2d at 404–05 (stating "record should be considered" and noting that "an ambiguous order may be construed in light of the motion upon which it was granted"); *Gainous v. Gainous*, 219 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (reciting that meaning of ambiguous judgment is ascertained from judgment and record). We may also consider rules of construction, to the extent we are persuaded that a given rule of construction is apt. *See Lone Star Cement*, 467 S.W.2d at 404–05.

## *Analysis*

The trial court's dismissal order concludes by ordering that "Herz's Rule 91a Motion to Dismiss is DENIED as to claims against Herz as Trustee and GRANTED as to all other claims against Herz, which are dismissed with prejudice." This language is plain in its meaning: it denies dismissal of claims asserted against Herz in his capacity as trustee. None of the other language in the order creates ambiguity. Given the plain language of the order, we cannot adopt Herz's contrary interpretation and conclude that the order dismisses all of Bobby's claims asserted against Herz as trustee, excepting only those that assert trust-mismanagement allegations. To adopt Herz's interpretation, we would have to rewrite the order to add language it lacks, which we cannot do. *See Quanto Int'l Co.*, 897 S.W.2d at 486 (stating court must apply "the literal meaning of the language used" when order is not ambiguous).

Herz does not identify any language in the order that creates ambiguity or supports his interpretation of the order. *See In re M & O Homebuilders*, 516 S.W.3d 101, 105 n.6 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (noting party's failure to "identify any language in the trial court's order creating any ambiguity"). Instead, citing *Karen Corp. v. Burlington Northern and Santa Fe Railway Co.*, Herz argues that we must "look at the record and not the language of the order." 107 S.W.3d 118, 125 (Tex. App.—Fort Worth 2003, pet. denied). We disagree.

While the *Karen Corp.* court did make the statement about looking to the record on which Herz relies, the court of appeals did so in an altogether different context. In that case, the plaintiff sought a declaratory judgment that it did not breach a contract, and the defendant counterclaimed for breach of contract. *Id.* at 121, 124–25. The trial court entered partial summary judgment for the plaintiff on the contract issue and later rendered an ostensibly final judgment. *Id.* at 121, 125. One of the issues on appeal was whether the trial court had ruled on the counterclaim, thereby disposing of all claims so that its judgment was final and appealable. *See id.* at 125. The court of appeals held that by granting the plaintiff's summary-judgment motion on the contract issue, the trial court impliedly rejected the defendant's contract counterclaim because the counterclaim "directly conflicted with the trial court's ruling." *Id.* It was under these circumstances that the court of appeals said it had to "look at the record and not the language of the order to determine whether the trial

19

court ruled on all the issues before it." *Id.* In saying so, the court of appeals cited *Lehmann v. Har–Con Corp.*, our Supreme Court's seminal decision instructing how to decide if a judgment rendered by a trial court without a conventional trial on the merits is final for purposes of appeal. *Id.* (citing 39 S.W.3d 191, 200 (Tex. 2001)).

On its face, *Karen Corp.* is unalike the appeal before us. Our appeal does not turn on whether the trial court's Rule 91a dismissal order "ruled on all the issues before it." The plain language of the order shows that the trial court did not rule on all issues, inasmuch as the trial court's order dismissed some claims but not others. The question before us is which claims the trial court dismissed and which ones the trial court did not. *Lehmann*'s rules for ascertaining whether a judgment is final and appealable do not provide us with any guidance as to how to answer this question. *See Lehmann*, 39 S.W.3d at 200 (explaining that judgment may be final if its language unequivocally says it disposes of all claims and all parties or if record shows it actually disposes of all claims and all parties, regardless of its language). Here, it is the ordinary rules of interpretation governing written orders and judgments that are dispositive, and Herz makes no attempt to explain how these ordinary rules of interpretation could produce the interpretation he advocates.

Moreover, even if the trial court's Rule 91a dismissal order was ambiguous and we could look to the record for clarification as to its scope, the record does not assist Herz's position. In his live pleading, Bobby states claims against Herz in his

20

capacity as lawyer and in his capacity as trustee. Herz moved to dismiss these two types of claims in separate motions, joining the law firm's motion to dismiss the lawyer-capacity claims and filing his own motion to dismiss the trustee-capacity ones. On its face, the trial court's dismissal order denies dismissal as to the claims made against Herz "as Trustee." Herz does not identify anything outside the order in which the trial court embraced a distinction between the claims asserted against Herz as trustee that ostensibly involve trust mismanagement and those that do not. Notably, the trial court did not express this sentiment during the Rule 91a hearing.

Herz argues that because the trial court dismissed all of Bobby's claims against the law firm and Ross, one can only conclude that the trial court also intended to dismiss all the claims against him other than the ones concerning trust mismanagement, even if some of the other claims are stated against him as trustee, because the claims that do not implicate actual management of the trust otherwise resemble the claims that Bobby made against the law firm and Ross. In support of this argument, Herz cites *Lopez v. Munoz, Hockema & Reed, L.L.P.*, in which our Supreme Court held that a fiduciary-duty claim was also disposed of by the trial court's adverse summary judgment on a breach-of-contract claim because the fiduciary-duty claim was solely based on the alleged breach of contract. 22 S.W.3d 857, 862 (Tex. 2000). We disagree that *Lopez* is applicable or instructive here.

21

In *Lopez*, clients sued the law firm that represented them in a wrongful-death suit for breach of a contingent-fee contract when the firm charged them an additional five percent under a provision triggered by an appeal. *Id.* at 859. The clients also sued the law firm for breach of fiduciary duty based on the contractual breach. *Id.* On appeal, the Supreme Court held that the contingent-fee contract was unambiguous and that the law firm did not breach it as a matter of law. *Id.* at 860–62. And this disposed of the clients' breach-of-fiduciary-duty claim too because that claim was solely based on the law firm's alleged breach of contract. *Id.* at 862.

*Lopez* does not resemble this appeal. In *Lopez*, the Court construed two different causes of action, one of which was premised on the validity of the other, that were asserted by the same plaintiffs against the same defendant in the same capacity—former clients suing the firm that had represented them for breach of contract and breach of fiduciary duty based on the contractual breach. *Id.* at 859–62. Here, in contrast, Bobby sued Herz in two distinct capacities, as lawyer and as trustee, which is not true of the law firm or Ross, who were not sued as trustee. The viability of Bobby's claims against Herz as trustee are not explicitly premised on the validity of Bobby's claims against the law firm or Ross despite their resemblance. So, the trial court's dismissal of the claims against the law firm and Ross does not necessarily shed light on its views about the claims made against Herz as trustee.

22

Finally, Herz argues that by disposing of all remaining claims asserted against him when he later moved for summary judgment solely on the trust-mismanagement claims, the trial court necessarily agreed with Herz's view of the dismissal order. But this circumstance is immaterial for two reasons—one factual and one legal.

As a factual matter, the trial court that granted summary judgment was not the one that had earlier signed the Rule 91a dismissal order. The 55th District Court of Harris County signed the Rule 91a dismissal order disposing of all claims except those made "against Herz as Trustee." Then, more than a year later and after a change of venue, the 122nd District Court of Galveston County granted summary judgment dismissing "all remaining claims and causes of action asserted against Trustee Herz." Consequently, this is not a situation in which the trial judge who granted summary judgment was interpreting a prior order that he had rendered or was expressing his view about his own intent in rendering the prior order. To be clear, we mean no disrespect to the judge of the 122nd Judicial District. We merely observe that he was in no better position than we are to discern the intent of the judge of the 55th District Court regarding the scope of the prior Rule 91a dismissal order.

In any event, as a legal matter, we do not defer to a trial court's view of the legal effect of an order or judgment, and this would remain true even if the same trial court had rendered both the Rule 91a dismissal order and the later summary judgment, because the legal effect of an order or judgment is a question of law that

we must review de novo. *Kim*, 632 S.W.3d at 265. The same is true of subsidiary issues, like whether an order or judgment is unambiguous. *See Gainous*, 219 S.W.3d at 108 (stating that whether divorce decree was ambiguous was question of law). When legal questions are presented, we do not defer to the trial court. *State v. SignAd, Ltd.*, 675 S.W.3d 19, 24 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). The dismissal order says what it says, and on appeal it is our role to interpret it.

Therefore, for the reasons expressed, we hold that the Rule 91a dismissal order unambiguously did not dispose of any claims Bobby asserted against Herz as trustee of the Three R Trusts. With this issue resolved, we now turn to Bobby's appellate complaints about the claims that the trial court did dismiss under Rule 91a.

### Dismissal of Claims against Herz as Lawyer under Rule 91a

Bobby argues the trial court erred in dismissing the claims he asserted against Herz as a lawyer under Rule 91a. These claims mirror the ones that Bobby made against the law firm, which the trial court also dismissed. We have already affirmed the dismissal of these same claims against the law firm. *See Moody*, 2023 WL 2697889, at *5–11. For the same reasons, these claims fare no better against Herz.

### *Standard of Review*

Whether a defendant is entitled to dismissal under the facts alleged by the plaintiff is a question of law. *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261,

266 (Tex. 2021). We therefore review de novo the merits of a trial court's ruling on a motion to dismiss under Rule 91a of the Texas Rules of Civil Procedure. *Id.*

### *Dismissal of a Cause of Action under Rule 91a*

With exceptions not applicable here, a party "may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. The motion must identify each cause of action to which it is addressed and specify the reasons a cause of action has no basis in law, fact, or both. TEX. R. CIV. P. 91a.2.

"A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. This standard is applicable in at least two situations, specifically, when the petition alleges (1) too few facts to state a legally cognizable claim for relief or (2) additional facts that, if true, bar recovery. *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

"A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1. This standard is like legal-sufficiency review, which asks whether a reasonable factfinder could make a given finding. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *Wooley v. Schaffer*, 447 S.W.3d 71, 75 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

In evaluating the sufficiency of the plaintiff's allegations, the trial court must apply the fair-notice standard of pleading required by our procedural rules. *Galperin*

25

*v. Smith Protective Servs.*, No. 01-18-00427-CV, 2019 WL 2376118, at *2 (Tex. App.—Houston [1st Dist.] June 6, 2019, no pet.) (mem. op.) (citing *Wooley*, 447 S.W.3d at 76). Under this standard, the allegations must give a defendant fair notice of the claim the plaintiff is making. TEX. R. CIV. P. 45(b), 47(a). To give fair notice, the allegations must inform the defendant of not only the cause of action but also the factual allegations underlying the legal claim as well as the relief sought. *Montelongo v. Abrea*, 622 S.W.3d 290, 300 (Tex. 2021); *see, e.g.*, *San Jacinto River Auth. v. Burney*, 570 S.W.3d 820, 832–38 (Tex. App.—Houston [1st Dist.] 2018) (plaintiffs adequately pled statutory taking where their petition included "extensive and detailed factual allegations," including allegations that river authority released water knowing that doing so had flooded area at issue in past and therefore knew its decision to release water would likely flood and damage their properties), *judg't aff'd sub nom. San Jacinto River Auth. v. Medina*, 627 S.W.3d 618 (Tex. 2021).

The test as to whether a pleading provides fair notice is whether a competent lawyer can ascertain from the allegations the nature and basic issues in dispute and the type of evidence that likely is relevant. *Lawrence v. Reyna Realty Grp.*, 434 S.W.3d 667, 675 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The purpose of fair notice, after all, is to ensure the defendant has the information needed to prepare a defense. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). Thus, the fair-notice standard requires the plaintiff to do more than merely recite

threadbare allegations of the elements of a cause of action supported by conclusory statements. *Zheng v. Vacation Network*, 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). However, fair notice does not require a plaintiff to set out in his pleading the evidence on which he will rely to establish the cause of action he alleges. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004) (plurality op.) (citing *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988)). In other words, under the fair-notice standard, the plaintiff need not plead evidentiary matters with meticulous particularity. *Schwartz v. Ins. Co. of State of Penn.*, 274 S.W.3d 270, 276 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). It is not a valid objection that a petition does not contain enough factual details, provided that it gives the defendant fair notice of the claim. *Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In ruling on the merits of a motion to dismiss, the trial court "may not consider evidence" and "must decide the motion based solely on the pleading of the cause of action" as well as any pleading exhibits allowed under Rule 59 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 91a.6. Of course, the trial court may also consider the substance of the motion, response, and arguments of counsel. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655–56 (Tex. 2020).

## *Analysis*

### *Breach of Fiduciary Duty*

In general, the elements of a claim of breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach; (3) causation; and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). An attorney owes a fiduciary duty to his client as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam). As a fiduciary, the attorney owes his client the utmost good faith in their dealings, must disclose all material facts that would affect their relationship as well as the legal consequences of these facts, including any conflicts of interest, and refrain from using the client's confidential information for his own benefit and against the client's interest. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 190 (Tex. App.—Houston [14th Dist.] 2002, no pet.). An attorney breaches his fiduciary duty to a client if the attorney benefits improperly from the attorney–client relationship by, for example, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends. *Stallworth v. Ayers*, 510 S.W.3d 187, 191 n.3 (Tex. App.—Houston [1st Dist.] 2016, no pet.). But the attorney's fiduciary duty to his client generally extends only to the scope of the representation. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159–60 (Tex.

2004). While actual damages must be proved to prevail for breach of fiduciary duty, in the context of an attorney–client relationship, the client need not prove actual damages to obtain forfeiture of attorney's fees he has paid as an equitable remedy when his attorney has committed a clear and serious breach of fiduciary duty. *Parker*, 514 S.W.3d at 220; *Burrow v. Arce*, 997 S.W.2d 229, 240–46 (Tex. 1999).

As discussed in our description of Bobby's live pleading, his allegations of breach of fiduciary duty by Herz as lawyer fall into four general categories. To wit:

(1) the placement of others, Ross or Ross's preferred candidates in particular, on the boards of various Moody-affiliated organizations in lieu of him;

(2) the failure to disclose conflicts of interest and subordination of his interest to the interest of others based on these undisclosed conflicts of interest;

(3) the improper use of confidential and nonconfidential information gained in the course of representing him to take actions against his interest; and

(4) a handful of breaches of fiduciary duty that neither fit into the preceding three categories of breaches nor form a coherent category of their own.

We address each of these categories of breach of fiduciary duty in turn.

1.      Board Placements

As to the first category about board placements, Bobby does not allege a claim that has a basis in law because his allegations, taken as true, together with inferences reasonably drawn from them, do not entitle him to relief for breach of fiduciary duty. By Bobby's own admission, Herz represented him with respect to three business endeavors: Moody Insurance Group, three urgent care clinics, and certain real-estate ventures. Bobby also alleges that Herz represented him personally, but he does not

29

allege this representation included work to place him on the boards of any Moody-affiliated organizations or keep others off of these boards. Nor may it reasonably be inferred that Herz, as a lawyer whom Bobby alleges represents all these Moody-affiliated organizations, could or would be engaged to achieve these ends, which on their face do not entail legal work. Simply put, because Herz's representation of Bobby and his business interests did not encompass lobbying for board positions or representing Bobby in disputes about board positions, Bobby cannot state a viable claim for breach of fiduciary duty based on these allegations, as Herz did not have any duty to act on Bobby's behalf in these matters. *See Joe*, 145 S.W.3d at 159–60 (scope of attorney's fiduciary duty is limited by scope of representation).

2.     Conflicts of Interest

Bobby's second category of allegations about conflicts of interest fails for similar reasons. While the failure to disclose conflicts of interest and the subordination of the client's interest based on such conflicts does constitute a breach of fiduciary duty, Bobby's factual allegations belie any such claim. In his live pleading, Bobby does not identify specific conflicts of interest arising from Herz's representation of him and his business interests and Herz's representation of another client or Herz's own interest. Instead, Bobby in the main refers to conflicts of interest that ostensibly exist between one Moody-affiliated organization and another, none of which he owns or controls. But these conflicts of interest do not involve Herz's

30

representation of Bobby or his interests, and any viable claim for breach of fiduciary duty must arise from Herz's representation of Bobby or his interests. *See id.*

Bobby does allege in general terms that Herz repeatedly placed his own interest or the interests of Moody-affiliated organizations ahead of Bobby's interest, but these general allegations are too conclusory—devoid of factual details—to state a viable claim for breach of fiduciary duty. Here, context matters. While only fair notice is required, the facts and evidence of a given case affect the application of this relatively liberal standard. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). Bobby alleges Herz represented both him and the various Moody-affiliated organizations for more than 30 years. Yet, in his live pleading, Bobby does not identify specific conflicts of interest that compromised Herz's representation of him or his interest. Given the span of time involved, generic references to his interest, the interests of others, and unidentified conflicts between them are insufficient. No competent attorney could prepare a defense based on these threadbare allegations, which are not anchored in time or connected to any particular events or outcomes (other than the claims about board placements, which themselves are not actionable). *See Montelongo*, 622 S.W.3d at 300 (fair notice requires statement of factual allegations underlying legal claim); *Zheng*, 468 S.W.3d at 186 (fair notice requires more than threadbare or conclusory recitation of elements of cause of action).

Bobby also alleges Herz did not disclose conflicts of interest arising from his legal representation of multiple beneficiaries of the Three R Trusts, failed to treat these beneficiaries' interests equally, and placed Ross's interest in particular ahead of Bobby's interest. But these allegations implicate Herz's performance as trustee, not his performance as a lawyer—to Bobby, any of the Moody-affiliated organizations, or even the trust itself. As trustee, Herz is a fiduciary of the trust beneficiaries. *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). But lawyers performing legal work on behalf of the trust do not represent the beneficiaries. *See id.* at 925. And Bobby has not alleged that Herz represented Bobby as a trust beneficiary, as opposed to representing him in other legal matters, or in connection with any trust-related transactions or disputes between the beneficiaries. In other words, Bobby has not alleged any basis on which Herz would owe him a fiduciary duty with respect to the Three R Trusts based on Herz's legal representation of Bobby, his businesses, or his real-estate ventures. Thus, Bobby cannot state a viable fiduciary-duty claim based on these allegations because Herz did not have a duty in his role as his lawyer (as opposed to trustee) to act on Bobby's behalf in trust-related matters or represent Bobby's interests as a trust beneficiary. *See Joe*, 145 S.W.3d at 159–60 (scope of attorney's fiduciary duty is limited by scope of representation).

Moreover, like his allegations about other conflicts of interest, Bobby's claims about conflicts of interests arising from Herz's legal representation of multiple

32

persons who happen to be beneficiaries of the Three R Trusts are conclusory. Bobby's allegations that Herz did not treat the interests of the beneficiaries equally and subordinated Bobby's interest to Ross's are bereft of facts about when this happened, how it was accomplished, or any harm that resulted. Threadbare allegations of inequality and preferential treatment resulting from unspecified conflicting interests among the beneficiaries do not provide fair notice of the claims made. *See Montelongo*, 622 S.W.3d at 300 (fair notice requires statement of factual allegations underlying legal claim); *Zheng*, 468 S.W.3d at 186 (fair notice requires more than threadbare or conclusory recitation of elements of cause of action).

3.    Improper Use of Client Information

The improper use of client confidences or use of the client's confidential information for an attorney's own benefit and against the client's interest can serve as the basis for a claim of breach of fiduciary duty. However, Bobby's allegations to this effect are too threadbare to lend the necessary factual support to such a claim.

Bobby alleges that Herz improperly made use of confidential and nonconfidential information, including financial information, that Herz gained during his representation of Bobby. As an initial matter, it seems improbable that Herz's alleged use of nonconfidential information could support a claim for breach of fiduciary duty. *See, e.g.*, *Kennedy v. Gulf Coast Cancer & Diagnostic Ctr. at Se.*, 326 S.W.3d 352, 360 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (attorney who

33

uses client's confidential information for his own interest and against client's interest to client's detriment may be liable for breach of fiduciary duty). But whatever the case may be, Bobby has not identified a particular type of information—confidential or nonconfidential—Herz allegedly gained by representing him and then improperly used. In the context of a representation spanning more than 30 years, a general allegation that Herz misused some unidentified client information does not give fair notice of the claim. *See Montelongo*, 622 S.W.3d at 300 (fair notice requires statement of factual allegations underlying legal claim); *Zheng*, 468 S.W.3d at 186 (fair notice requires more than threadbare or conclusory recitation of elements of cause of action); *see also Brown v. Green*, 302 S.W.3d 1, 11 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (general and conclusory statements as to use of confidential information insufficient to resist no-evidence summary judgment).

Similarly, with respect to causation, Bobby alleges Herz used this unspecified client information to achieve various ends, like removing Bobby from the board of one Moody-affiliated organization and securing the cancelation of marketing and consulting agreements with that same organization. But Bobby does not allege how Herz used or could have used client information of any sort to bring about Bobby's removal from the board or the cancelation of these contracts. While Bobby is not obligated to catalogue with meticulous particularity the evidence he would rely on to support these claims, he must at least allege the basic facts underlying them.

34

Instead, Bobby has merely made a conclusory assertion that Herz improperly used Bobby's information to achieve these ends, a claim that requires some factual elaboration if for no other reason than because the boards of the Moody-affiliated organizations would have been the decisionmakers, not Herz in his role as lawyer.

Bobby tries to avoid this infirmity by alleging that Herz acted indirectly, using Bobby's information to have him removed from the board by others and to assist and conspire with others in the cancelation of the contracts. But because these additional allegations are likewise conclusory—Bobby does not state what kind of client information was shared with whom or why this influenced them—they merely make Bobby's claims that much murkier. When read as a whole, these allegations still do not provide Herz with fair notice of the claim being made because at each step of the way they consist of conclusory assertions rather than factual allegations. *See Montelongo*, 622 S.W.3d at 300 (fair notice requires statement of factual allegations underlying legal claim); *Zheng*, 468 S.W.3d at 186 (fair notice requires more than threadbare or conclusory recitation of elements of cause of action).

4.      Other Alleged Breaches

Without elaboration, Bobby alleges that Herz repeatedly "failed to deal fairly and in good faith" with him. Assuming that Bobby means that Herz did so during the course of representing him, that period spans more than 30 years. On its face, Bobby's conclusory assertion of repeated failures to be fair or act in good faith,

35

without any suggestion of the conduct at issue, does not provide fair notice of the claims that Bobby is making against Herz. *See Montelongo*, 622 S.W.3d at 300 (fair notice requires statement of factual allegations underlying legal claim).

Without elaboration, Bobby alleges that Herz attempted to evict him from an office he has had for more than 33 years. Bobby does not allege Herz is his landlord, and Bobby premises his fiduciary-duty claim on the attorney–client relationship that once existed between him and Herz, so Bobby presumably does not mean that Herz tried to evict him from the office in the most literal sense. But Bobby also does not allege that Herz represented Bobby's landlord—whoever that might be—in an eviction suit or other eviction-related efforts. Bobby does not allege any factual allegations whatsoever in support of this claim, including when this happened, whether it was before or after Herz stopped representing Bobby and his interests, the nature of any lease or other relevant agreement as to the office, the identity of the parties to this lease or agreement, or the circumstances of the attempted eviction. Nonetheless, it is possible that this eviction allegation provides fair notice to Herz of the claim being made simply because of the specificity of the issue of eviction. *See Aldous*, 405 S.W.3d at 857–58 (allegation that defendants accused plaintiff of numerous criminal offenses electronically, in writing, and orally was sufficient to provide fair notice that plaintiff was alleging claim for defamation per se even though plaintiff's petition did not recite specific defamatory statements at issue).

36

Even so, Bobby's attempted-eviction allegation does not state a claim that has a basis in law. As noted, Bobby alleges that Herz breached the fiduciary duty he owed Bobby as his onetime counsel. But Bobby does not allege that the scope of Herz's representation of him ever entailed securing office space on his behalf. Nor does Bobby allege that Herz simultaneously represented him and another who was adverse to him with respect to the eviction. Without some alleged connection to the scope of legal services Herz provided to Bobby, and the court cannot ascertain what Herz allegedly did based on the conclusory eviction allegation made, whatever it is Herz is alleged to have done cannot be characterized as a breach of Herz's fiduciary duty to Bobby as his counsel or former counsel. *See Joe*, 145 S.W.3d at 159–60 (scope of attorney's fiduciary duty is limited by scope of representation); *IQ Holdings v. Stewart Title Guar. Co.*, 451 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (fiduciary duties do not extend beyond scope of relationship).

Without elaboration, Bobby alleges that once Herz "gained control," his or his firm's legal fees charged to all Moody-affiliated organizations, and specifically those within the Three R Trusts, "increased exponentially." Presumably, Bobby is alleging that Herz is engaged in some form of self-dealing. Once again, however, this fee allegation has nothing to do with Herz's representation of Bobby or his business interests. Because this allegation, which concerns what other clients pay Herz, does not arise out of the attorney–client relationship that existed between

37

Bobby and Herz, Bobby cannot state a viable claim for breach of fiduciary duty on this basis. *See Joe*, 145 S.W.3d at 159–60 (scope of attorney's fiduciary duty is limited by scope of representation); *see also Huie*, 922 S.W.2d at 925 (lawyers performing legal work on behalf of trust do not represent trust beneficiaries).

Finally, Bobby alleges that Herz's threat to ruin him financially and make his life miserable is a breach of fiduciary duty. But Bobby alleges that Herz made this threat several months after Herz and the law firm stopped representing him and his interests. Because Herz threatened Bobby after the attorney–client relationship had ended, Bobby cannot state a viable claim for breach of fiduciary duty based on this threat. *See, e.g.*, *Burnett v. Sharp*, 328 S.W.3d 594, 601–02 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (indicating that outside context of suits involving attorney's failure to give client funds belonging to client after representation ends, rule is that attorney's fiduciary duty to client ends when attorney–client relationship ends); *see also Jetall Cos. v. Hoover Slovacek LLP*, No. 14-20-00691-CV, 2022 WL 906218, at *6 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied) (mem. op.) (attorney owes fiduciary duty to client but, absent agreement to contrary, fiduciary duty created by attorney–client relationship ends when relationship ends).

## *Conspiracy*

Civil conspiracy is a vicarious liability theory that imparts liability to a coconspirator who may not otherwise be liable for the underlying tort or other

wrong. *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136, 140–42 (Tex. 2019). The elements of civil conspiracy are: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuit of the object or course of action; and (5) damages occur as a proximate result. *Parker*, 514 S.W.3d at 222. To be cognizable, a civil conspiracy requires the coconspirator to have the specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. *Id.* This is so because the plaintiff's injury arises from the underlying tort or wrong, not the conspiracy in and of itself. *Agar Corp.*, 580 S.W.3d at 141–42.

We previously affirmed the dismissal of all of Bobby's claims against the law firm and Ross. *See Moody*, 2023 WL 2697889, at *5–11. Because the law firm and Ross are the parties with whom Bobby alleges Herz conspired, Bobby's conspiracy allegations against Herz as lawyer also fail because there cannot be a conspiracy of one. *See Agar Corp.*, 580 S.W.3d at 141 (combination of two or more persons is element of conspiracy claim); *Plotkin v. Joekel*, 304 S.W.3d 455, 488 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that "[t]here cannot be a conspiracy of one" because cause of action for civil conspiracy requires two or more people).

**Amendment of Pleadings in Lieu of Rule 91a Dismissal of Claims**

Bobby argues that the trial court erred in not allowing him to amend his live pleading in lieu of dismissing his claims because Rule 91a allows amendment. Bobby made this same argument with respect to the dismissal of his claims against the law firm and Ross, and we rejected his argument in the prior appeal. *See Moody*, 2023 WL 2697889, at *12–13 (holding that Rule 91a does not allow party to replead claims trial court has already disposed of via Rule 91a motion to dismiss). For the same reasons, which we restate below, we again reject Bobby's argument here.

*Applicable Law*

When a defendant files a motion to dismiss under Rule 91a, three general courses of action are available to the plaintiff. The plaintiff may (1) nonsuit a challenged cause of action; (2) amend a challenged cause of action; or (3) maintain a challenged cause of action as he has pleaded it. *See* TEX. R. CIV. P. 91a.5.

If the plaintiff nonsuits a challenged cause of action at least three days before the hearing on the motion to dismiss, the trial court may not rule on the motion. TEX. R. CIV. P. 91a.5(a). If he amends a challenged cause of action at least three days before the hearing on the motion to dismiss, the defendant may withdraw the motion to dismiss or file an amended motion, so long as he does so before the hearing date. TEX. R. CIV. P. 91a.5(b). If the defendant withdraws the motion, the trial court may not rule on it. TEX. R. CIV. P. 91a.5(c). Whereas, if the defendant files an amended

40

motion, the deadlines for the plaintiff to nonsuit or further amend a challenged cause of action restart. TEX. R. CIV. P. 91a.5(d). Unless the parties agree otherwise, the trial court must rule on a motion to dismiss if the motion has not been withdrawn or the challenged cause of action has not been nonsuited. TEX. R. CIV. P. 91a.5(c).

In ruling on a motion to dismiss, the trial court cannot consider an amendment to a challenged cause of action that was not filed at least three days before the hearing. TEX. R. CIV. P. 91a.5(b), (c). Rule 91a does not provide for the amendment of a challenged cause of action after the trial court has granted a motion to dismiss.

### *Analysis*

Bobby did not amend the challenged causes of action at least three days before the hearing on Herz's motions to dismiss under Rule 91a. Nor did Bobby try to untimely amend the challenged causes of action. Instead, in his response to the motions to dismiss, he argued that his allegations were adequate, and asked for permission to amend his live pleading if the trial court disagreed. In other words, Bobby sought leave to amend only in the event of an unfavorable ruling.

Rule 91a expressly sets forth when a plaintiff may amend a challenged cause of action, providing that this must be done at least three days before the hearing on a motion to dismiss and "the court must not consider" a proposed amendment that does not comply with Rule 91a's deadline. TEX. R. CIV. P. 91a.5(b), (c); *see also Gaskamp v. WSP USA*, 596 S.W.3d 457, 467 (Tex. App.—Houston [1st Dist.] 2020,

41

pet. dism'd) (en banc) (noting Rule 91a expressly addresses amendment of pleadings). In *Dailey v. Thorpe*, we ruled that Rule 91a does not allow a plaintiff to seek a ruling and amend in the event the ruling is an unfavorable one resulting in dismissal. 445 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Bobby argues that *Dailey* is not binding because our court disapproved of amendments after the trial court makes a Rule 91a ruling in dicta. We disagree.

In *Dailey*, the court made two distinct determinations. First, the court determined that the plaintiffs were not entitled to amend in lieu of dismissal because they had not requested this relief in the trial court. *Id.* Second, the trial court determined that Rule 91a's text does not allow for "an opportunity to cure any defects after the fact." *Id.* When, as in *Dailey*, a court could have relied on either of two determinations—there, error preservation and application of Rule 91a's text—to reach its ultimate conclusion—there, no entitlement to replead—the court's determinations are alternative holdings, not dicta. *See State Farm Mut. Auto Ins. Co. v. Lopez*, 156 S.W.3d 550, 554–55 (Tex. 2004) (distinguishing between dicta and alternative holdings in case involving latter—waiver and substantive ruling).

At any rate, even if one could accurately describe *Dailey*'s determination that Rule 91a does not allow a plaintiff to replead after an unfavorable ruling as dicta, its determination is correct because the language of Rule 91a is not open to any other

interpretation. Accordingly, we would hew to *Dailey* even if its determination were dicta because we are persuaded that its determination of this issue is correct.

**Summary Judgment on Claims against Herz as Trustee**

Bobby argues that Herz did not seek summary judgment on most of the claims asserted against him as trustee. Thus, Bobby reasons, the trial court erred in granting summary judgment as to these claims. Bobby further argues that he raised a genuine issue of material fact precluding summary judgment on the handful of claims—all involving trust mismanagement—that Herz challenged in his summary-judgment motion. Therefore, Bobby explains, the trial court likewise erred in granting summary judgment in favor of Herz as to these trust-mismanagement claims.

*Standard of Review*

We review summary judgments de novo. *Dillard v. SNC-Lavalin Eng'rs & Constructors*, 629 S.W.3d 692, 696 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

*Traditional Summary-Judgment Standard*

To obtain traditional summary judgment, a party must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Thus, when a defendant moves for summary judgment, he must either conclusively disprove at least one essential element of a challenged claim or conclusively prove the elements of an affirmative defense. *Blair v. Fritsch*, 608 S.W.3d 407, 412–13 (Tex. App.—Houston [1st Dist.] 2020, pet. struck).

If a defendant establishes his entitlement to traditional summary judgment, the burden then shifts to the nonmovant to raise a genuine issue of material fact. *Id.* at 413. A genuine issue of material fact exists if the summary-judgment evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* We review this evidence in the light most favorable to the nonmovant, crediting evidence that favors the nonmovant if a reasonable factfinder could, disregarding contrary evidence unless a reasonable factfinder could not, and indulging all reasonable inferences and resolving any doubts in the nonmovant's favor. *Id.*

That said, a conclusory affidavit does not create a genuine issue of material fact precluding summary judgment. *See, e.g.*, *Brown v. Mesa Distribs.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting "affidavit that states only legal or factual conclusions without providing factual support is not proper summary judgment evidence" and holding fact witness's affidavit reciting that party failed to make lease payments was conclusory due to absence of "specific factual information regarding circumstances surrounding the alleged breach" and lack of factual support for amount outstanding under lease). Nor does an affidavit that amounts to no more than a sworn restatement of the allegations made in a party's pleadings. *See, e.g.*, *Fortitude Energy v. Sooner Pipe*, 564 S.W.3d 167, 183 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding "affidavit that is nothing more

than a sworn repetition of allegations in the pleadings" is of no probative value and conclusory and therefore does not create fact issue on summary judgment).

We cannot affirm a summary judgment on a ground that the movant did not raise in his summary-judgment motion in the trial court. *Garrett Operators v. City of Houston*, 461 S.W.3d 585, 591 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

### *Analysis*

#### *Unresolved Claims*

We agree with Bobby that most of his claims against Herz as trustee have not been resolved in the trial court. As we explained earlier, the 55th District Court of Harris County denied Herz's Rule 91a motion to dismiss with respect to all claims made against Herz as trustee. After Bobby's lawsuit was transferred to the 122nd District Court of Galveston County, Herz moved for summary judgment. In his motion, Herz argued that all the claims made against him as trustee had been dismissed, save only the five alleging trust mismanagement, and he therefore sought summary judgment solely with respect to the five trust-mismanagement claims. Accordingly, the trial court's summary-judgment order and final judgment, which purport to dispose of all remaining claims against Herz, are erroneous and must be reversed to the extent they purport to dispose of the claims made against Herz as trustee other than the five trust-mismanagement claims. *See Lehmann*, 39 S.W.3d at 200 (explaining that "judgment that grants more relief than a party is entitled to is

45

subject to reversal" but is not interlocutory if it says it disposes of all claims); *Garrett Operators*, 461 S.W.3d at 591 (explaining that we cannot affirm summary judgment on a ground movant did not raise in his summary-judgment motion in trial court).

*Trust-Mismanagement Claims*

As discussed, Bobby alleges five breaches of fiduciary duty based on Herz's mismanagement of the trust or its assets or other trust-related malfeasance or misfeasance. He alleges that Herz as trustee breached his duties as a fiduciary by:

- failing for many years to make productive use of millions of dollars of cash within the trust and thereby depriving the trust of millions of dollars in interest, dividends, and higher equity values;

- failing to disclose to the beneficiaries how much Herz earns as counsel in representing the Moody-affiliated organizations that are trust assets;

- failing to properly account for trust expenses, including how Herz was paid by the trust or the Moody-affiliated organizations that are trust assets;

- intentionally mismanaging an unspecified Moody-affiliated organization that is a trust asset, and then profiting by representing the organization when it was sued due to his mismanagement; and

- delegating his authority or responsibility to preserve and protect trust assets to unspecified third parties.

Herz sought traditional summary judgment on these five claims, arguing that the trust agreement forecloses any liability on these grounds. He attached the trust agreement and related amendments as exhibits to his summary-judgment motion.

The trust agreement confers broad management authority on Herz as the trustee. Among other things, the trust agreement specifies that the trustee:

46

- has "absolute discretion" as to investment of trust assets with the right to hold any property or make any investment that he "may deem advisable, without regard in either instance to any principles of diversification" and "without regard to whether any such property is productive property";

- does not have a duty to "reinvest immediately" available funds but may instead "withhold such funds from reinvestment" until he "may deem it advisable to reinvest such funds," may retain or acquire "wasting assets," and "may retain or acquire property returning no income or slight income" for as long as he "shall think fit";

- may "delegate authority to agents, with full power of substitution, and to act through such agents" and may also "employ attorneys, investment counsel, real estate agents" as he "may deem advisable" as well as "pay reasonable compensation to any person or firm employed";

- has "discretion" to exercise his enumerated trust powers in whatever way he judges "is the wisest and best course to pursue in the best interest" of the trust, "without the necessity of obtaining the consent or permission of any person interested" in the trust, even though the trustee may also be an agent of others "interested in the same matters"; and

- is acquitted and discharged "for all matters" concerning the trust "up to the time of the rendering of the annual statement," if the trustee prepares an annual statement at the request of the donor or a beneficiary, so long as the statement "is accepted and ratified by acquiescence or otherwise."

In addition, the trust agreement contains a broad clause that exculpates Herz as trustee from liability under most circumstances. The exculpatory clause states:

> The Trustee is expressly relieved of all liability to any beneficiary under the trust or to any other person whomsoever because of any loss or losses that may develop as a result of the Trustee complying with the direction that it use its own discretion and judgment rather than be governed by any certain rule or rules of law with respect to investment of trust funds, and Trustee, having acted in good faith, shall not be liable for losses resulting from errors of judgment or from the exercise of its own discretion with respect to the kind and character of investment that it may hold from time to time.

Herz also submitted a declaration in support of his summary-judgment motion. In addition to authenticating the trust agreement and amendments attached to the summary-judgment motion, Herz stated that for the past 20 years he has given Robert L. Moody, Sr. and each trust beneficiary the financial statements and tax returns for the trust, except for 2012, when Moody, Sr. said they were not needed. These statements were approved, first by Moody, Sr. and later by Moody National Bank's trust department after he executed a power of attorney in 2014, and no one, including Bobby, has ever objected to any of these statements or returns.

Bobby argues on appeal that the preceding evidence—the trust agreement and amendments and Herz's declaration—do not entitle Herz to summary judgment. In particular, Bobby argues that Herz did not carry his burden of proof to show the good-faith required by the trust agreement's exculpatory clause. Bobby further argues that he submitted evidence creating a fact issue as to Herz's good faith—specifically, Bobby's declaration accompanying his summary-judgment response.

As to Bobby's first argument, based on our court's precedent, we disagree that Herz bore the burden of proof on summary judgment to establish his good faith. In *Kohlhausen v. Baxendale*, this court held that once a trustee has introduced into evidence a trust agreement containing an exculpatory clause like the one before us, the summary-judgment burden then shifts to the nonmovant to introduce some evidence of bad faith. No. 01-15-00901-CV, 2018 WL 1278132, at *3 (Tex. App.—

Houston [1st Dist.] Mar. 13, 2018, no pet.) (mem. op.) (relying on *Tex. Commerce Bank v. Grizzle*, 96 S.W.3d 240 (Tex. 2002), in support of this proposition).

As to Bobby's second argument, his declaration does not create a fact issue that precludes summary-judgment on his five trust-mismanagement claims because his declaration is conclusory and therefore constitutes no evidence. In his declaration, Bobby's sole representation directly addressing Herz's good faith states that "Herz has not acted in good faith in carrying out his duties as Trustee, and has not acted in good faith towards me as a beneficiary" without further elaboration. To the extent Bobby's other representations could be construed as indirectly addressing Herz's good faith, his other representations are equally conclusory, often amounting to little more than the repetition of the allegations of his live pleading. Thus, Bobby's declaration does not create a fact issue as to Herz's good faith or lack of good faith. *Fortitude Energy*, 564 S.W.3d at 183; *Brown*, 414 S.W.3d at 287.

The trial court did not err in dismissing the trust-mismanagement claims.

## Trial Court's Award of Attorney's Fees

In both its initial order awarding attorney's fees and in its final judgment, the trial court awarded Herz $500,000 in fees, invoking both Rule 91a.7 of the Texas Rules of Civil Procedure and a provision of the Texas Trust Code—section 114.064 of the Texas Property Code—as authority authorizing the award of these fees. The

trial court did not identify what amount of this total fee award related to the claims dismissed under Rule 91a or to the claims disposed of by way of summary judgment.

On appeal, Bobby seeks reversal of the fee award in its entirety, and Herz likewise asks us to affirm the award in its entirety. Neither party has provided the court with the briefing necessary to affirm or reverse the award in part in the event that we affirm the trial court's final judgment in part and reverse it in part, as we do here. Therefore, on remand, the trial court must redecide what amount Herz is entitled to, given that he secured dismissal of all claims asserted against him as a lawyer under Rule 91a and obtained summary judgment on the trust-mismanagement claims asserted against him as trustee, and we have affirmed these results but reversed as to the remainder of the claims made against him as trustee.

## CONCLUSION

We affirm the portion of the trial court's final judgment dismissing the claims asserted against Herz in his capacity as a lawyer under Rule 91a of the Texas Rules of Civil Procedure. We likewise affirm the portion of the trial court's final judgment granting summary judgment on and dismissing the five trust-mismanagement claims asserted against Herz in his capacity as trustee. However, we reverse the portion of the trial court's final judgment dismissing the remainder of the claims asserted against Herz in his capacity as trustee, and we likewise reverse the trial court's award of attorney's fees to Herz. We remand this cause to the trial court for further

proceedings consistent with our opinion, including a redetermination of the attorney's fees to which Herz is entitled in light of our judgment affirming the dismissal of some, but not all, of the claims made against him in this lawsuit.

Gordon Goodman<br>Justice

Panel consists of Justices Goodman, Countiss, and Farris.

Justice Farris, concurring in the judgment without separate opinion.